UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE S. KIRSCH,<br>as Shareholders' Representative of<br>LAWRENCE S. KIRSCH,<br>CHARLES W. KRIETE, MICHAEL J.<br>CHASE and GEORGE PUSZKA, | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| | ) | |
| BRIGHTSTAR CORP., a Delaware<br>corporation, | )<br>)<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Lawrence S. Kirsch ("Kirsch"), as representative of the Shareholders (the "Shareholders' Representative") of Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase and George Puszka (collectively, "Shareholders"), by his attorneys Margaret A. Gisch and Matthew C. Wasserman of the law firm Golan & Christie LLP, as his Complaint for Breach of Contract against Defendant, Brightstar Corp. ("Brightstar"), states as follows:

### Nature of Action

1.      Shareholders collectively owned all of the stock of OTBT, Inc. ("OTBT"), a small distributor that originated a unique method of selling and/or bundling information technology products (mobility focused) and normalizing the data of mobile accounts of multiple cellular carriers for distribution to resellers, valued-added resellers, and agents for the ultimate consumption by commercial, government and education end-users.

2.      On August 31, 2010, Brightstar, a multi-billion dollar, privately-held company, purchased all of the OTBT stock from Shareholders (the "Acquisition") for a purchase price of

$1 million, plus debt obligations plus payment of an "Earn-Out" premised on achieving certain targets on the express condition that Brightstar and its affiliates sell certain products and services exclusively through OTBT after the Acquisition. After the Acquisition Brightstar changed OTBT's name to ActivateIT , Inc.

3.      The period for determining whether the Earn-Out targets were satisfied commenced on April 1, 2011 and ended on March 31, 2012 (the "Earn-Out Period"), thus giving Brightstar six (6) months to fully integrate OTBT into its system and get OTBT fully operational prior to the commencement of the Earn-Out Period (which was more time than Brightstar requested during negotiations).

4.      More specifically, Brightstar agreed that, during the Earn-Out Period, all sales of products and services of the type that are applicable to the Earn-Out would exclusively go through OTBT, regardless of what part of the world the sales were located – locally or overseas. To further emphasize this agreement, Brightstar agreed that neither it nor any of its affiliates would sell any products or services of the type that would be applicable toward the Earn-Out during the Earn-Out Period.

5.      Some time after April 1, 2011, Tech Data Corporation (a publicly traded company, hereinafter referred to as "Tech Data") entered into a Joint Venture relationship with Brightstar to own and operate OTBT. After commencing the Joint Venture between Brightstar and Tech Data (the "Joint Venture"), the Joint Venture partners changed ActivateIT, Inc.'s name to TD Mobility, Inc. (TD Mobility, which was formerly known as ActivateIT, Inc., which was formerly known as OTBT, is hereinafter referred to as "TD Mobility").

6.     When Brightstar provided its initial computation of the Earn-Out, it provided a final calculation that was substantially less than what it would have been if Brightstar followed the agreed upon procedures and allocations.

7.     As set forth in more detail below, the Shareholders' Representative learned that Brightstar had not routed all sales through TD Mobility, instead using its overseas and other affiliates to sell products and services of the type that would be applicable to the Earn-Out in violation of the Stock Purchase Agreement.   The Shareholders' Representative also discovered that Brightstar had re-routed to Tech Data some of the Revenue, such as (without limitation) marketing incentives, that should have been attributed to the Earn-Out calculation and further that Brightstar assigned unrelated overhead and other costs to TD Mobility all of which negatively impacted the Earn-Out.

8.     The Stock Purchase Agreement provided a mechanism ("Accounting Dispute Resolution Procedure") for resolving issues related to calculating the Earn Out which would include, without limitation, Brightstar: (a) failing to provide complete and adequate financial information for the Shareholders to evaluate Brightstar's calculation of the Earn-Out payment; (b) diverting valuable marketing incentives through Tech Data ; (c) failing to add back certain bonuses and variable compensation to TD Mobility's earnings as required under the Stock Purchase Agreement; and (d) and Tech Data charging TD Mobility with certain overhead allocation and payroll amounts that are not justified given the services provided.

9.     The Accounting Dispute Resolution Procedure, however, does not address the fundamental breach by Brightstar of not routing all sales through TD Mobility.  Accordingly, the Shareholders' Representative brings this action to address Brightstar's breach of the Stock

Purchase Agreement by not routing all sales through TD Mobility and improperly selling the agreed-upon products and services either directly or through affiliated entities.

## The Parties

10.     Plaintiff Lawrence S. Kirsch ("Kirsch") is an individual residing in Long Grove, Lake County, Illinois.

11.     Plaintiff Charles W. Kriete ("Kriete") is an individual residing in Highwood, Lake County, Illinois.

12.     Plaintiff Michael J. Chase ("Chase") is an individual residing in Highwood, Lake County, Illinois of TD Mobility.

13.     Plaintiff George Puszka ("Puszka") is an individual residing in Buffalo Grove, Lake County, Illinois.

14.     Defendant, Brightstar, is a Delaware corporation with its principal place of business located in Miami, Florida.

## Jurisidiction and Venue

15.     The jurisdiction of this Court is based upon 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

16.     Venue is proper because the acts and omissions giving rise to this action, including Brightstar's purchase of OTBT, occurred in the Northern District of Illinois. Plaintiffs reside in, and Brightstar conducts business in, this District through the successor entity to OTBT now operating as TDMobility, Inc., also an Illinois corporation (OTBT, and its successor entities,

including TDMobility, Inc., are referred to collectively herein as "TDMobility"). Accordingly, venue is proper pursuant to 28 U.S.C. § 1391.

## Background Facts

17.     OTBT was a distributor of handsets, information technology devices, accessories and ancillary services related thereto, and had established valuable carrier contracts with provisions unique in the industry.

18.     Kirsch, Kriete, Chase and Puszka were the sole shareholders of OTBT. Kriete is currently the Executive Vice-President of TD Mobility, and Chase is currently the Vice President of Operations of TD Mobility.

19.     On August 31, 2010, OTBT and Shareholders, on the one hand, and Brightstar, on the other hand, entered into a Stock Purchase Agreement, pursuant to which Brightstar purchased 100% of the issued and outstanding Capital Stock of OTBT (the "Stock Purchase Agreement"). The purchase price, plus Earn-Out payment, set forth in the Stock Purchase Agreement, was intentionally designed to provide Brightstar a six (6) month grace period to integrate its business with OTBT's business before the Earn-Out Period would commence (which was more time than Birghstar requested during negotiations). The parties desired to maximize the potential Earn-Out payment and Brightstar estimated that six months would provide it sufficient time to transition its other sales to OTBT. A copy of the Stock Purchase Agreement, and the First and Second Amendments thereto, are attached hereto as **Exhibits 1, 2 and 3, respectively**.

**I.      The Shareholders' Right to Receive an Earn-Out Payment**

20.     Pursuant to Section 2.1(c) of the Stock Purchase Agreement (the "Earn-Out Provision"), Brightstar is obligated to pay to the Shareholders a performance based "earn-out" (the "Earn-Out"), as part of the purchase price for the outstanding stock of OTBT.

21.     Section 2.1(c)(i) provides that:

> The Earn-Out shall be linked to tiered milestones of the Company's GAAP-reported revenue ("Revenues") and EBITDA derived from any and all sales including, but not limited to, all handsets, information technology devices (including laptops, tablets, netbooks, etc.), accessories, activation commission, airtime, and other ancillary service revenue derived through the following channels: Tech Data channel partners, additional IT product distributor relationships such as Ingram Micro or Synnex, and current and future direct Company and/or Purchaser IT reseller channel partners (including wireless carrier partners that utilize the Company for back office support, such as billing on behalf of or activation services) with primary end customers in the commercial (small-medium-large business or enterprise), health care, and government (state, local, education, and federal) markets, for the twelve (12) month period commencing on April 1, 2011 and ending on March 31, 2012 (the "Earn-Out Period") as shown on the Company's financial statements as adjusted pursuant to Section 2.1(c)(ii) below. **Purchaser represents and warrants that, except as set forth in Section 2.1(c)(ii) below, prior to March 31, 2012, neither Purchaser nor any of its Affiliates (except Company) will directly or indirectly sell any products or services which would generate Revenue.** (Emphasis Added)

22.     As noted above, in the last sentence of Section 2.1(c)(i), Brightstar commits to not "directly or indirectly" sell products that generate "Revenues" directly or through Brightstar's Affiliates (except OTBT).

23.     Section 2.1(c)(iv) of the Stock Purchase Agreement sets forth the basis for calculating the Earn-Out.

24.     The Stock Purchase Agreement requires Brightstar to provide a calculation of Revenue, with notice to be delivered to the Shareholders with supporting financial statements (the "Applicable Financials") for the Earn-Out Period.

25.     Section 2.1(c)(iv)(x) provides that the Shareholders' Earn-Out payment is equal to the EBITDA, not to exceed the EBITDA Cap, pursuant to a chart included in the Second Amendment to the Stock Purchase Agreement. (*See* Ex. 3.)

26.     Section 2.1(c)(iv)(z) of the Stock Purchase Agreement requires Brightstar to provide the Shareholders with the Applicable Financials "as promptly as possible following March 31, 2012, but no later than June 30, 2012."

27.     Applicable Financials, referenced as Brightstar's financial statements but not defined with any specificity in the Stock Purchase Agreement, by necessity would include information sufficient for the Shareholders to evaluate whether they agree or disagree with Brightstar's calculation of the Earn-Out payment.

28.     The Stock Purchase Agreement requires that the Applicable Financials be provided by Brightstar to the Shareholders' Representative.  The Shareholders collectively agreed that Kirsch would serve as the Shareholders' Representative and represent their collective interests with respect to the Stock Purchase Agreement.

29.     Section 2.1(c)(v) of the Stock Purchase Agreement further requires that, within forty-five (45) days of receipt of the Applicable Financials, the Shareholders are required to notify Brightstar regarding any disagreement with Brightstar's calculation of the Revenue and EBITDA for the Earn-Out Period.

**II.     Delivery of the Applicable Financials and Brightstar's Calculation of the Revenue, EBITDA and Earn-Out**

30.     On June 28, 2012, Brightstar sent a letter, dated June 27, 2012 (the "Earn-Out Letter") to Kirsch, as Shareholders' Representative, enclosing financial information related to Brightstar and concluding that the Shareholders' Earn-Out payment should be a nominal amount (the "Brightstar Calculation").  A copy of the Earn-Out Letter is attached hereto as **Exhibit 4**.

31.     The document attached to the Earn-Out Letter does not provide the Shareholders with information sufficient to evaluate the basis for the Brightstar Calculation.

32.     Between June 28, 2012 and August 1, 2012, the Shareholders' Representative repeatedly requested additional financial information from Brightstar. While Brightstar provided some additional documents, it failed to provide adequate and complete Applicable Financials as required by the Stock Purchase Agreement.

33.     On August 1, 2012, the Shareholders' Representative sent a letter to Brightstar requesting an extension of time to review the Applicable Financials that were then being compiled by Brightstar. A copy of the August 1, 2012 letter is attached hereto as **Exhibit 5**.

34.     Pursuant to the August 1, 2012 letter, the parties agreed to extend the time for the Shareholder's to review the Applicable Financials by ten (10) days, thereby providing the Shareholders until August 21, 2012 to complete their review of the Applicable Financials.

35.     On August 8, 2012, the Shareholders' Representative sent another letter to Brightstar regarding the Earn-Out. In the August 8, 2012 letter, he:

(i)     again requested that Brightstar provide the Applicable Financials;

(ii)    confirmed that Brightstar failed to respond to the Shareholders request for an additional extension of time to allow Brightstar to provide adequate and complete Applicable Financials; and, therefore

(iii)   formally called Brightstar in breach of the Stock Purchase Agreement for failing to deliver the Applicable Financials and disagreed with Brightstar's calculation of the Revenue and EBITDA for the Earn-Out Period due to the incomplete information provided by Brightstar to date.

A copy of the August 8, 2012 letter is attached hereto as **Exhibit 6**.

36.     On August 20, 2012, Shareholders' Representative sent a final letter to Brightstar regarding the Earn-Out. In the August 20, 2012 letter, he set forth the Shareholders' specific disagreements with Brightstar's calculations of the Revenue and EBITDA for the Earn-Out Period, to the extent they were known based on the limited information provided by Brightstar. In particular, the Shareholders' Representative highlighted that Brightstar:

(i)    failed to account for all Revenue and EBITDA, including marketing incentive revenue, which appears to have been intentionally diverted in part to Brightstar's joint venture partner, Tech Data , contrary to all previous accounting practices;

(ii)    failed to adjust its payroll and compensation calculations in accordance with the Stock Purchase Agreement;

(iii)    failed to provide adequate and complete Applicable Financials; and

(iv)    failed to appropriately reflect the targets agreed upon by the parties in the Second Amendment to the Stock Purchase Agreement.

A copy of the August 20, 2012 letter is attached hereto as **Exhibit 7.**

37.    Pursuant to the Stock Purchase Agreement, Brightstar was prohibited from directly or indirectly selling any products or services which would generate Revenue through itself or any affiliate other than TD Mobility, regardless of where the sales occurred, whether locally or globally.

38.    Brightstar breached the Stock Purchase Agreement by (among other things) selling products and services, which would generate Revenue, through entities other than TD Mobility, as required in the Stock Purchase Agreement.

39.    Based on Brightstar's publicly-available government filings, the Shareholders have determined that the proper calculation of the Revenue and EBITDA entitles the Shareholders to the maximum Earn-Out payment.

40.    The Shareholders have fully performed their obligations under the Stock Purchase Agreement.

41.    The Shareholders have sustained damages in excess of $75,000, plus attorney's fees.

WHEREFORE, Plaintiff, Lawrence S. Kirsch, as Shareholders' Representative for Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase and George Puszka, prays that this

Court enter judgment in Shareholders' favor and against Defendant, Brightstar Corp., in an amount in excess of $75,0000, plus attorneys' fees and costs, and grant such other and further relief as the Court deems just and appropriate.

Dated:  August 30, 2012

Respectfully submitted,

LAWRENCE S. KIRSCH, as Shareholders' Representative for LAWRENCE S. KIRSCH, CHARLES W. KRIETE, MICHAEL J. CHASE AND GEORGE PUSZKA,

By: /s/ Margaret A. Gisch
    One of their Attorneys

Margaret A. Gisch, Esq. (#6204431)
Matthew C. Wasserman, Esq. (#6287638)
GOLAN & CHRISTIE LLP
70 West Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300