# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE S. KIRSCH, as Shareholders' Representative of LAWRENCE S. KIRSCH, CHARLES W. KRIETE, MICHAEL J. CHASE, and GEORGE PUSZKA, <br><br> Plaintiff, <br><br> v. <br><br> BRIGHTSTAR CORPORATION, <br><br> Defendant. | No. 12 C 6966 <br><br> Chief Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Lawrence S. Kirsch, as Shareholders' Representative of Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase, and George Puszka (collectively "Shareholders"), brings this diversity action against Brightstar Corporation ("Brightstar") alleging common law breach of contract. Presently before the Court are Brightstar's motion to dismiss Kirsch's complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Shareholders' motion for leave to file a supplemental complaint. For the reasons set forth below, Brightstar's motion is denied and Shareholders' motion is granted.

## RELEVANT FACTS

Shareholders are all individuals residing in Lake County, Illinois, and Brightstar is a Delaware corporation with its principal place of business in Florida. (R. 1, Compl. ¶¶ 10-14.) Shareholders collectively owned all of the stock of OTBT, Inc. (the "Company"), a distributor of

1

handsets, information technology devices and accessories, and ancillary services.[1] (*Id.* ¶¶ 17-18.) On August 31, 2010, Brightstar purchased all of the Company stock from Shareholders. (*Id.* ¶ 19.) The details of the purchase were laid out in a Stock Purchase Agreement (the "Agreement") and two amendments thereto, which Shareholders attached to the complaint. (*Id.*; R. 1, Ex. 1, Agreement; R. 1, Ex. 2, First Am. Agreement; R. 1, Ex. 3, Second Am. Agreement.)[2] The price was set at $1 million plus debt obligations and payment of an additional performance-based amount (the "Earn-Out"). (R. 1, Compl. ¶¶ 2, 20.) The dispute in this suit revolves primarily around the calculation of the Earn-Out and arises out of a disagreement over the meaning of the language in Section 2.1(c)(i) of the Agreement, which provides:

> The Earn-Out shall be linked to tiered milestones of the Company's GAAP-reported revenue ("Revenues") and EBITDA derived from any and all sales including, but not limited to, all handsets, information technology devices (including laptops, tablets, netbooks, etc.), accessories, activation commission, airtime, and other ancillary service revenue derived through the following channels: Tech Data channel partners, additional IT product distributor relationships such as Ingram Micro or Synnex, and current and future direct Company and/or [Brightstar] IT reseller channel partners (including wireless carrier partners that utilize the Company for back office support, such as billing on behalf of or activation services) with primary end customers in the commercial (small-medium-large business or enterprise), health care, and government (state, local, education, and federal) markets, for the twelve (12) month period commencing on April 1, 2011 and ending on March 31, 2012 (the "Earn-Out Period") as shown on the Company's financial statements as adjusted pursuant to Section 2.1(c)(ii) below. [Brightstar] represents and warrants that, except as set forth in Section 2.1(c)(ii) below, prior to March 31, 2012, neither [Brightstar] nor any of its Affiliates (except Company) will directly or indirectly sell any products or services which would generate Revenue.

---

[1] After Brightstar acquired the Company, it changed OTBT's name to ActivateIT, Inc., which later became TD Mobility, Inc. (R. 1, Compl. ¶¶ 2, 5.) For the sake of clarity, the Court will refer to the entity as the "Company" throughout.

[2] The First Amendment to the Agreement amends Section 2.1(b)(ii), which is unrelated to the issues presently in dispute. (R. 1, Ex. 2, First Am. Agreement.) The Second Amendment to the Agreement amends Section 2.1(c)(iii), which sets forth the tiered milestones of Revenues and the corresponding EBITDA Caps to determine the Earn-Out.

2

(R. 1, Compl. ¶ 21; R. 1, Ex. 1, Agreement § 2.1(c)(i).)

The Agreement also requires Brightstar to "prepare the Applicable Financials in good faith and deliver them" to Kirsch, the Shareholders' Representative, by June 30, 2012, (R. 1, Ex. 1, Agreement § 2.1(c)(iv)(z)), and defines the "Applicable Financials" as the Company's financial statements for the Earn-Out Period as adjusted in accordance with the Agreement, (R. 1, Ex. 1, Agreement § 2.1(c)(iv)(x)). Further, the Agreement requires Shareholders to notify Brightstar regarding any disagreement with Brightstar's calculation of the Revenues and the EBITDA for the Earn-Out Period within 45 days of receipt of the Applicable Financials. (R. 1, Ex. 1, Agreement § 2.1(c)(v).) On June 28, 2012, Brightstar sent a letter (the "Earn-Out Letter") to Kirsch, enclosing financial information and concluding that the Earn-Out should be a nominal amount. (R. 1, Compl. ¶ 30; R. 1, Ex. 4, Earn-Out Letter.) Shareholders assert that the single document attached to the Earn-Out Letter does not provide them with sufficient information to calculate the Earn-Out. (R. 1, Compl. ¶ 31.) Shareholders allege that between June 28, 2012, and August 1, 2012, Kirsch repeatedly requested additional financial information from Brightstar. (*Id.* ¶ 32.) While Brightstar provided additional documents, Shareholders allege that it did not provide "adequate and complete Applicable Financials as required by the [Agreement]." (*Id.*) Shareholders allege that Brightstar incorrectly calculated the Earn Out because, *inter alia*, it failed to account for all Revenue and appears to have intentionally diverted some Revenue to an affiliate of Brightstar. (*Id.* ¶ 36.)

Shareholders specifically allege that Brightstar breached the Agreement by "selling products and services, which would generate Revenue, through entities other than [the Company]," despite the provision in Section 2.1(c)(i) requiring Brightstar to route all sales that would generate Revenue through the Company. (*Id.* ¶ 38.) Based on "publicly-available

government filings" not included with the complaint, the Shareholders have determined that they are entitled to the maximum Earn-Out payment under the Agreement, not the nominal amount Brightstar informed them they were entitled to in the Earn-Out Letter. (*Id.* ¶ 39.) They thus allege damages in excess of $75,000.[3] (*Id.* ¶ 41.)

## PROCEDURAL HISTORY

Shareholders filed their one-count complaint on August 30, 2012. (R. 1, Compl.) In it, they allege that Brightstar breached the Agreement by failing to route all sales of the agreed upon products and services through the Company, instead selling them through other affiliated entities. (*Id.* ¶¶ 9, 38.) On December 12, 2012, Brightstar filed the instant motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 11, Def.'s Mot.) Brightstar argues that nothing in the Agreement requires Brightstar to reroute sales of the agreed upon products and services from any affiliated entities through the Company, and therefore Shareholders' allegation that Brightstar is in breach conflicts with the plain language of the Agreement. (R. 12, Def.'s Mem. at 5-6.) Brightstar argues that Shareholders ask the Court to treat the language in Section 2.1(c)(i) of the Agreement as a "global non-compete [clause] that barred Brightstar from conducting its multi-billion dollar business unless Brightstar re-routed it through the newly acquired [Company]." (*Id.* at 6.) Brightstar argues that Shareholders have failed to sufficiently plead the elements of an enforceable restrictive covenant. (*Id.* at 7-9.) Brightstar additionally argues that Shareholders' allegations are too conclusory to state a claim because they do not allege with sufficient

---

[3] Although Shareholders do not allege a specific amount that is in controversy, they allege that they are entitled to "the maximum Earn-Out payment." (R. 1, Compl. ¶ 39.) Depending on the Revenues calculation, the maximum Earn-Out payment ranges from $500,000 to $5,000,000. (R. 1, Ex. 3, Second Am. Agreement § 3.1.)

4

specificity, *inter alia*, what products and services they believe were improperly sold through what entities other than the Company or the basis for that belief. (*Id.* at 2.)

On February 1, 2013, Shareholders responded to Brightstar's motion. (R. 15, Pl.'s Resp.) They argue that Brightstar's characterization of the complaint as asking the Court to impose a global non-compete clause on the Agreement is "erroneous" and "intentionally misleading." (*Id.* at 1.) Shareholders argue that they are not seeking to enforce a fictional non-compete clause and instead have alleged a simple breach of Section 2.1(c)(1) of the Agreement. (*Id.* at 3-5.) They also challenge Brightstar's reading of Section 2.1(c)(1) as rendering much of that Section "superfluous" and relying on extrinsic evidence to undermine its plain meaning. (*Id.* at 7-14.) Shareholders argue that, at best, Brightstar contends that the Agreement contains a latent ambiguity thereby precluding dismissal at this stage of the litigation. (*Id.* at 14.) Brightstar filed its reply in support of its motion to dismiss on February 25, 2013. (R. 16, Def.'s Reply.) On July 12, 2013, Shareholders moved for leave to file a supplemental complaint. (R. 18, Pl.'s Mot. Leave.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the non-movant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis."

*Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Detailed factual allegations" are not required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

A document that is attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when ruling on a Rule 12(b)(6) motion to dismiss, a court must "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999)). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment" in his favor. *Id.* (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

## ANALYSIS

### I. Jurisdiction and applicable law

Shareholders are all individuals residing in Illinois, and Brightstar is a Delaware corporation with its principal place of business in Florida. (R. 1, Compl., ¶¶ 10-14.) Shareholders allege that they "have sustained damages in excess of $75,000, plus attorney's fees," (*id.* ¶ 41), and Brightstar does not challenge that purported amount. The Court thus concludes that it has diversity jurisdiction to hear this action pursuant to 28 U.S.C. § 1332(a).

A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). The *Erie* doctrine extends to conflict of laws principles and requires the Court to apply the conflict of laws rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Courts are to "honor reasonable choice-of-law stipulations in contract cases," *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009), however, and "do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991).

Section 7.9 of the Agreement states: "This Agreement and the rights and obligations of the parties hereunder shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Florida, without regard to conflicts of laws principles." (R. 1, Ex. 1, Agreement § 7.9.) Additionally, both parties agree that the Agreement is subject to, and that the Court should apply, Florida law. (*See* R. 12, Def.'s Mem. at 5; R. 15, Pl.'s Resp. at 3.) Accordingly, the Court will apply Florida contract law to determine whether Shareholders have sufficiently stated a claim for breach of contract.

## II. Whether Shareholders have sufficiently stated a claim for breach of contract

Brightstar argues that Shareholders have failed to state a claim for breach of contract because they have failed to allege a material breach of the Agreement. (R. 12, Def.'s Mem. at 5.) To state a claim for breach of contract under Florida law, a plaintiff must plead "(1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000). Brightstar contends that a plain reading of the unambiguous terms of the Agreement defeats Shareholders' claim that Brightstar has materially breached the Agreement. (R. 12, Def.'s Mem. at 5.) Specifically, Brightstar asserts that the term

7

"Revenue" is defined in Section 2.1(c)(i) of the Agreement as "the Company's GAAP-reported revenue" and thus only encompasses revenue generated on sales by the Company. (*Id.* at 6.) Brightstar argues that the Agreement's language thus only prohibits it and its affiliates from diverting sales away from the Company to artificially depress the Earn-Out and does not require Brightstar to route the sales of the aforementioned products and services by other affiliated entities through the Company, as Shareholders allege. (R. 12, Def.'s Mem. at 6.) Brightstar contends that if the parties had intended Section 2.1(c)(i) to be a global non-compete provision, as Shareholders' reading suggests, they could have drafted it as such, as evidenced by the non-compete provisions in Sections 6.3 and 6.4. (*Id.* at 7.)

Shareholders, on the other hand, argue that the unambiguous language in the last sentence of Section 2.1(c)(i) is a covenant that neither Brightstar nor any of its affiliates (except the Company) would sell any products or services that would generate Revenue. (R. 15, Pl.'s Resp. at 8-9.) Shareholders maintain that under Section 2.1(c)(i) of the Agreement, Revenue-generating sales include the sales of certain listed products and services through certain defined sales channels to certain customers. (*Id.* at 8.) In addition, Shareholders argue that they have not asserted that Section 2.1(c)(i) contains a global non-compete clause and are only seeking damages for breach of the Agreement. (*Id.* at 4-5.) Finally, Shareholders assert that Brightstar's arguments ask the Court "to look beyond the four corners of the Agreement," which is inappropriate at the motion to dismiss stage. (*Id.* at 12-14.)

Under Florida law, contract interpretation "is a question of law and belongs to the courts, provided 'the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences.'" *Okeelanta Corp. v. Bygrave*, 660 So. 2d 743, 747 (Fla. Dist. Ct. App. 1995) (quoting *Friedman v. Va. Metal Prods. Corp.*, 56 So. 2d 515, 516 (Fla.

1952)). "[C]ontracts are to be construed in order to give effect to the intent of the parties," which should be determined from within the four corners of the contract. *Burns v. Barfield*, 732 So. 2d 1202, 1205 (Fla. Dist. Ct. App. 1999). The plain meaning of the language employed by the parties is the best indication of the parties' intent. *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011).

The language in Section 2.1(c)(i) that defines "Revenue" is as follows:

> The Earn-Out shall be linked to tiered milestones of the Company's GAAP-reported revenue ("Revenues") and EBITDA derived from any and all sales . . . derived through [certain specified] channels . . . with [certain specified] customers . . . [during the Earn-Out Period] as shown on the Company's financial statements [subject to certain adjustments].

(R. 1, Ex. 1, Agreement § 2.1(c)(i).) Brightstar's reading of that sentence confines the description following EBITDA ("derived from any and all sales including . . .") to EBITDA, (*see* R. 12, Def.'s Mem. at 6), while Shareholders' reading applies the descriptive language to both EBITDA and Revenues, (R. 15, Pl.'s Resp. at 7). Shareholders argue that the extensive description "is rendered superfluous if 'Revenue' is simply whatever money is generated by [the Company's] sales." (*Id.*) Brightstar argues that Shareholders' application of the description to Revenue, a term that was narrowly defined as "the Company's GAAP-reported revenue," is "absurd" and ignores the plain meaning of the language. (R. 16, Def.'s Reply at 3.) From the language of the Agreement, each party's reading is a reasonable interpretation of the parties' intent and neither is clearly incorrect.

The parties additionally dispute the meaning of the last sentence: "[Brightstar] represents and warrants that . . . neither [Brightstar] nor any of its Affiliates (except Company) will directly or indirectly sell any products or services which would generate Revenue." (*Id.*) Brightstar reads the last sentence narrowly to mean that Brightstar will not interfere by selling any products

9

or services that, without Brightstar's interference, would generate revenue for the Company. (R. 16, Def.'s Reply at 4.) Shareholders read the sentence broadly to mean that Brightstar and its affiliates will not sell any products or services that *could* generate Revenue, meaning all sales derived through the specified channels to the specified customers. (R. 15, Pl.'s Resp. at 8.) This reading is supported by the broad "any and all sales" language in Section 2.1(c)(i) that Shareholders allege defines the term "Revenue." Thus, each party's reading is a reasonable interpretation of the parties' intent.

Both parties attempt to introduce extrinsic evidence and point the Court to other Sections of the Agreement to support their interpretations. When a contract contains ambiguous terms, extrinsic evidence is admissible to "explain, clarify or elucidate" the ambiguity. *Friedman*, 56 So. 2d at 517. It is inappropriate, however, for the Court to consider extrinsic evidence at this stage in the litigation. *Vienneau v. Metro. Life Ins. Co.*, 548 So. 2d 856, 860 (Fla. Dist. Ct. App. 1989) (quoting *Hitt v. N. Broward Hosp. Dist.*, 387 So. 2d 482, 483 (Fla. Dist. Ct. App. 1980)) (At the motion to dismiss stage, the Court's "'gaze is limited to the four corners of the complaint.'"). In addition, the Court does not find the rest of the Agreement helpful in clarifying the ambiguity about what "Revenue" entails and what Brightstar is prohibited from doing.

The Court is thus faced with a situation in which both parties allege that the applicable language of Section 2.1(c)(i) is clear and unambiguous, while at the same time attaching two reasonable yet different meanings to that language. (*See* R. 12, Def.'s Mem. at 5; R. 15, Pl.'s Resp. at 15.) A contract that is "susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract" is ambiguous. *Miller v. Kase*, 789 So. 2d 1095, 1097-98 (Fla. Dist. Ct. App. 2001); *see also Mariner Cay Prop. Owners Ass'n v. Topside Marina, Inc.*, 714 So. 2d 1130, 1131-32 (Fla. Dist. Ct. App. 1998) ("While each side in this case

maintains that the agreement is clear and unambiguous, . . . the interpretations advocated by both sides, while reasonable, differ. We find that this paradox renders the agreement ambiguous because it is fairly susceptible to different constructions."). Under Florida law, when a contract is ambiguous, the Court cannot resolve the dispute at the motion to dismiss stage. *Vienneau*, 548 So. 2d at 860 ("unless it clearly appears as a matter of law that a contract cannot support the action alleged, a complaint should not be dismissed on motion to dismiss for failure to state a cause of action"); *see also Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170–CIV, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a the [sic] motion to dismiss."). The case must therefore proceed to discovery and, ultimately, to resolution by a fact finder. *Cliff Berry, Inc. v. State*, 116 So. 3d 394, 412 (Fla. Dist. Ct. App. 2012) ("where the terms of a written instrument are disputed and reasonably susceptible to more than one construction, . . . the ambiguity must be resolved by the trier of fact").

As for Brightstar's argument that Shareholders' allegations are too conclusory because they do not allege the details of Brightstar's alleged breach with sufficient specificity, (*id.* at 2), the Court finds that Shareholders' complaint alleges a breach of the Agreement in sufficient detail to meet the notice pleading requirements set forth in *Iqbal* and *Twombly*. Shareholders have pleaded the existence of a valid contract between the parties, the mutual rights and obligations of the parties under the Agreement, the nature of Brightstar's alleged breach of the Agreement, and the damages Shareholders suffered as a result of the alleged breach. (R. 1, Compl. ¶¶ 19-25, 38-39, 41.) Thus, the complaint for breach of contract contains enough detail to alert Brightstar as to the claim brought against it and the grounds on which it rests. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Construing the allegations in the light most

favorable to the Shareholders and drawing all inferences in their favor, the Court finds that the Shareholders' reading of the Agreement is plausible. Thus, the complaint adequately states a claim for breach of contract.

### III. Shareholders' motion for leave to file a supplemental complaint

Shareholders move for leave to file a supplemental complaint, alleging two additional breaches of the Agreement and seeking additional damages. (R. 18, Pl.'s Mot. Leave at 2.) In the proposed supplemental complaint, Shareholders first allege that Brightstar breached the Agreement by miscalculating the EBITDA as well as the Revenue. (R. 18-1, Proposed Suppl. Compl. ¶15.) Shareholders further allege that they attempted to resolve this Breach through the Accounting Dispute Resolution ("ADR") Procedure set forth in the Agreement, but Brightstar expressly refused to participate. (*Id.* ¶¶ 18-20.) Shareholders allege that this refusal to participate in the ADR Procedure is a second additional breach of the Agreement. (*Id.* ¶ 22.)

Federal Rule of Civil Procedure 15(d) gives the Court discretion to allow "a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). When ruling on a motion to supplement, a court "should consider the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense; its probable merit; whether the claim could have been added earlier; and the burden on the defendant of having to meet it." *Glatt v. Chi. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). Here, the Court does not find it likely that the supplement is being sought "in a desperate effort to protract the litigation;" rather, Shareholders allege that they did not include the allegations about the EBITDA breach in their original complaint because they attempted to resolve that dispute through the ADR Procedure set forth in the Agreement. (R. 18-1, Proposed Suppl. Compl. ¶¶ 15-22.) It would have been impossible for

Shareholders to include these allegations in their original complaint because at the time of filing, their attempts to pursue resolution through the ADR Procedure were ongoing. (*Id.* ¶¶ 18-19.) In light of the Court's ruling on Brightstar's motion to dismiss the original complaint, the Court does not find the proposed supplemental complaint to be clearly futile. Finally, the Court does not find the burden on Brightstar to be prohibitive; Brightstar must still answer the original complaint, and the supplemental complaint does not allege an additional count, just additional instances of breach of the Agreement. For all of these reasons, the Court grants Shareholders' motion for leave to file a supplemental complaint. Brightstar has 21 days to answer or otherwise respond to the supplemental complaint and the original complaint.

## CONCLUSION

For the foregoing reasons, Brightstar's motion to dismiss (R. 11) is DENIED and Shareholders' motion for leave to file a supplemental complaint (R. 18) is GRANTED. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on October 9, 2013 at 9:45 a.m.

ENTERED: _____
Chief Judge Ruben Castillo
United States District Court

Dated: **September 4, 2013**