## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAWRENCE S. KIRSCH, as Shareholders' Representative of LAWRENCE S. KIRSCH, CHARLES W. KRIETE, MICHAEL J. CHASE and GEORGE PUSZKA,** | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **No. 12 C 6966** |
| **v.** | ) ) | **The Honorable Ruben Castillo** |
| **BRIGHTSTAR CORP., a Delaware corporation,** | ) ) ) ) | |
| **Defendant.** | ) | |

### <u>PLAINTIFF'S MOTION TO COMPEL AGAINST BRIGHTSTAR AND FOR LEAVE TO COMPLETE MISCELLANEOUS DISCOVERY</u>

Plaintiff Lawrence S. Kirsch ("Plaintiff"), as Shareholders' Representative of Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase and George Puszka (collectively, the "Shareholders") seeks an order (a) compelling Defendant Brightstar Corp. ("Brightstar") to produce specific omitted documents (as detailed below), including, without limitation, certain documents redacted or marked as privileged, or to tender said documents for an *in camera* review; (b) granting Plaintiff leave to complete certain discovery which either (i) was disclosed by Defendant or a third party very late in the process or (ii) is following up on discovery begun prior to the discovery deadline, but is not entirely completed (as detailed below).

### INTRODUCTION

1.     As an overview:  this litigation is a dispute between the former Shareholders of OTBT n/k/a TDMobility ("TDMobility") and the acquiring entity, Brightstar, over the Earn-Out provision of the parties' Stock Purchase Agreement (the "SPA"). It involves the proper calculation of sales and EBITDA derived from data and information primarily within the control

of Brightstar and its joint venture partner, Tech Data. Brightstar, which was contractually prohibited from selling its remaining interest in TDMobility prior to paying the Earn-Out, went ahead and sold its remaining 50% interest to Tech Data. This improper sale occurred late in 2013, well after this litigation had begun. Brightstar and Tech Data, however, kept the sale documents a secret until May 6, 2014, when the Tech Data Stock Purchase Agreement was finally produced by Brightstar (the "2013 Tech Data SPA"). This document reveals that the initial Earn-Out calculation that was asserted by Brightstar in its June 27, 2012 letter ($226,000) is incorrect. The 2013 Tech Data SPA reveals a second calculation of $554,000 (The "New Earn-Out Calculation").

2.      Other than finally producing this damaging document in May 2014, and the work sheet in support, Brightstar has produced no other emails or correspondence referencing the negotiation or inclusion of this New Earn-Out Calculation in the 2013 Stock Purchase Agreement. Brightstar contends that any communication between itself and Tech Data related to the Earn-Out is privileged under the common interest doctrine.

3.      Additionally, when Brightstar sold its final 50% interest to Tech Data in 2013, it lost control of the TDMobility database, causing Brightstar to lose access to the data relevant to TDMobility's operations and the Shareholders to be unable to access TDMobility's data without paying thousands of dollars. Tech Data was transitioning its electronic storage systems at that time and was intending to eliminate the database. At Plaintiff's request and cost, the entire TDMobility database was forensically imaged. Now, since neither Brightstar nor Tech Data have been able to produce relevant information, Plaintiff has requested that certain portions of the database be processed for purposes of searching for the missing documents. Plaintiff seeks leave to complete that process even after discovery is closed.

4.      With respect to documents which are, as yet, unproduced, Plaintiff filed a Motion to Compel Production (the "First Motion") on March 5, 2014. Brightstar then slowly produced more documents, most recently on June 11, 2014. However, certain documents are still missing.

5.      Contending that Tech Data was responsible for doing the calculation, Brightstar claims to have very few records related to the Earn-Out calculation. Brightstar's former employees, however, have testified in depositions about the existence of documents that either were or should have been used in calculating the Earn-Out. Plaintiff is seeking those records.

6.      Next, Brightstar has produced documents that are severely redacted but do not appear to fall into the categories of privileged or work-product protected information. Plaintiff requests a review of Brightstar's justification for withholding and/or redacting information, and if appropriate, an *in camera* review of those documents.

7.      Additionally, on June 9, 2014 Brightstar filed Supplemental Rule 26(a) Disclosures (the "Supplemental Disclosures"), which disclosed four new individuals with relevant knowledge. Plaintiff is not sure if depositions are necessary but, pending the Brightstar corporate representative and Mr. Claure's depositions on June 27th and June 30th, would like to have the ability to depose one or more of these new individuals, if necessary. Further, Tech Data's corporate representative is unavailable until the first week of August 2014, and Plaintiff seeks leave to take his deposition in Florida at a date and time amenable to his schedule. (Defendant does not object to this deposition occurring outside the close of discovery.) There are also a small number of other outstanding discovery issues that Shareholders seek to complete after June 30, 2014, which are identified below.

8.      As more fully described below, Plaintiff has made multiple conciliation efforts under Fed. R. Civ. P. Rule 37 and Local Rule 37.2. Plaintiff and Brightstar have engaged in

multiple correspondence exchanges and telephone calls, yet the parties are unable to resolve the disputes addressed in this motion.

## I.  Evidence of New Earn-Out Calculation

9.      Brightstar originally represented the Earn-Out as $226,000. However, the New Earn-Out Calculation stated in the 2013 Tech Data SPA (that was only produced on May 6, 2014) reflects the "accrued" Earn-Out to be $554,000. Section 1 of the 2013 Tech Data SPA states:

> The consideration to be paid by Buyer to Seller at closing shall be [*omitted due to "Confidential" designation*] (the "Purchase Price") **of which Five Hundred Fifty Four Thousand United States Dollars (USD$554,000) represents the <u>currently accrued</u> earn out (the "Earn-Out") payable to the Company's prior shareholders** as detailed in the Shareholders' Agreement among Buyer, Seller and the Company, dated March 23, 2011 (the "Shareholders' Agreement") and the Stock Purchase Agreement dated as of August 31, 2010, as amended (the "2010 Stock Purchase Agreement"), among the Seller, the Company, Lawrence S. Kirsch ("Kirsch"), Charles W. Kriete ("Kriete"), Michael J. Chase ("Chase") and George Puszka ("Puszka" and together with Kirsch, Kriete and Chase, the "Former Shareholders") (emphasis added).

10.     Brightstar produced some worksheets demonstrating how the New Earn-Out number was calculated.  Brightstar did not, however, produce any correspondence or other documentation related to this calculation or its inclusion in the 2013 SPA.  Brightstar must have, in conjunction with the 2013 Tech Data SPA, correspondence, emails or other documentation reflecting the negotiation of this aspect of the 2013 Tech Data SPA, yet nothing has been produced.  Brightstar has informed Plaintiff that it considers communication with Tech Data on this issue to be privileged under the common interest doctrine of attorney-client privilege.

11.     The common interest doctrine, however, is inapplicable here.

The rationale underlying the "common interest" doctrine accounts for the Seventh Circuit's insistence that the parties claiming protection must share a common *legal* interest. The "common interest" doctrine is designed to encourage "parties with a shared legal interest to seek legal 'assistance in order to meet legal requirements

4

and to plan their conduct' accordingly." *BDO Seidman*, 492 F.3d at 815; *Pampered Chef*, 737 F.Supp.2d at 964. That planning serves the public interest by advancing compliance with the law, "facilitating the administration of justice" and averting litigation. *BDO Seidman*, 492 F.3d at 816. In this, as in most Circuits, the "common interest" doctrine will only apply "where the parties undertake a joint effort with respect to a common legal interest." *BDO Seidman*, 492 F.3d at 815–16. A shared rooting interest in the "successful outcome of a case" is not a common *legal* interest. *See Miller UK Ltd. v. Caterpillar, Inc.,* ––– F.Supp.2d –––, –––, 2014 WL 67340, at *12 (N.D.Ill.2014)(citing among others, *In re Pacific Pictures Corp.,* 679 F.3d at 1129–1130; *Continental Oil Co. v. United States,* 330 F.2d 347, 350 (9th Cir.1964); *Leader Technologies, Inc.,* 719 F.Supp.2d at 376; *Berger v. Seyfarth Shaw LLP,* 2008 WL 4681834, at *2 (N.D.Cal.2008); *Islands Leasing, Inc.,* 215 F.R.D. at 473; *Baby Neal v. Casey,* 1990 WL 163194, at *2 (E.D.Pa.1990).

*McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 2014 WL 2514623 (N.D. Ill. June 4, 2014).

12.     As Tech Data is not legally liable under the SPA, nor are the Shareholders seeking to hold Tech Data liable for Brightstar's obligations under the SPA, Tech Data and Brightstar do not share a common legal interest as required to be entitled to protection under the common interest doctrine.

13.     Moreover, the correspondence and negotiations between Tech Data and Brightstar related to the Earn-Out is likely to be highly relevant to the instant dispute. The central issue in this case is whether Brightstar understated the SPA's Earn-Out.

14.     Since communications between or involving Tech Data related to the Earn-Out calculation (whether the original or New Calculation) are not privileged and are clearly relevant, they should be produced.

## II.     Other Categories of Documents Not Yet Produced

15.     In addition to the items outlined above, Plaintiff has made multiple requests for specific documents that Brightstar has failed to produce. Plaintiff asks this Court to compel Brightstar to produce documents as follows:

a. **Annual affiliate allocations of overhead expenses for 2010, 2011, and 2012**: These documents were referenced by Brightstar's former employee, Debbie Marry during her deposition on April 25, 2014. During the deposition, Debbie stated that every Fall, Brightstar would prepare a slide that described the allocation methodologies that was contained in a PowerPoint presentation regarding the budgeting process. (Transcript of Debbie Marry at 74-75 is attached as **Exhibit A.**) Brightstar claims these are irrelevant (because no "overhead" was assigned to TDMobility) but also Brightstar claims it is unable to locate these documents following a reasonable search. Shareholders contend that this explanation is untenable and ask that the production be compelled or that an adverse inference be imposed with respect to all Brightstar charges to TDMobility to the extent the charges impact the EBITDA calculation.

b. **Remaining board/steering committee agendas, power points, minutes, other reports**. The Shareholder Agreement between Tech Data and Brightstar which governed the parties' relationship for TDMobility, a portion of which is attached hereto as **Exhibit B**, required the TD Mobility Board to meet at least quarterly (§7.4(b) and minutes to be prepared; the Board was required to provide each shareholder monthly management accounts (§8.3(a)) and audited accounts annually (§8.3(b); and an entire Schedule of the Shareholder Agreement is dedicated to a checklist of what is to be accomplished at each meeting. (Schedule 3.) Brightstar produced some,[1] but clearly not all. Brightstar contends that it is unable to locate these documents following a reasonable search. Shareholders contend that this explanation is untenable and ask that the production be compelled or that an adverse inference be imposed with respect to all missing reports in to the extent TDMobility was failing to meet the projected revenues and EBITDA.

c. **Brightstar's European Affiliate (BEL)**. Brightstar produced one chart, (BRIGHTSTAR00007) attached as **Exhibit C**, which appears prepared for purposes of this litigation and purports to reflect BEL revenues. Shareholders have asked for the documentation supporting the conclusions in the chart. Brightstar contends it has no other data underlying BRIGHTSTAR00007 in Brightstar's custody or control. The Shareholders' position since the inception of this litigation is that Brightstar needs to account for its Affiliates' direct and indirect sales of Relevant Products and Services. Shareholders submit that Brightstar's position is untenable and ask that the production be compelled or that an adverse inference be imposed with respect to the revenue and EBITDA which meets or exceeds the thresholds and EBITDA caps in the SPA.

d. **Other Brightstar Affiliates**. Brightstar produced a couple of charts (BRIGHTSTAR00001-06), attached as **Group Exhibit D**, prepared for purposes of this litigation, which purport to summarize charges to resellers with non-consumer end users. The Shareholders have asked for the documents that were used to prepare the charts and the underlying documentation to support these figures. Brightstar contends that none of its affiliates have sales to entities with primary end users in the commercial/government category. Yet, in order to take this position, Brightstar must have basis on which to rest

---

[1] Brightstar has produced meeting minutes for September 30, 2010, October 15, 2010, October 22, 2010, and March 4, 2011. No agendas, presentations or meeting minutes after that time or during the Earn-Out.

that conclusion, such as analytics showing that the end users are consumer-based versus commercial based. Nothing along these lines has been produced. Nor have the supporting documentation for the charts. Shareholders contend that the documents underlying the charts and the support for Brightstar's conclusion that all of its affiliates sell only to resellers with consumer-end users be produced or that an adverse inference be permitted that Brightstar is unable to account for its end-users and therefore unable to account for its Affiliate's sales.

16.     The Shareholders submit that these documents should have been produced in response to Plaintiff's First Request for Production of Documents, but the Shareholders have also specifically requested these documents in more recent requests and each category was discussed in email correspondence as recently as this week. Plaintiff asks that this Court enter an order compelling Brightstar to produce the requested documents or to provide adverse inferences as requested herein.

## III. Privileged Document Dispute

17.     Brightstar's production has numerous and extensive redactions that appear to the Shareholders to be improper. On several occasions, Plaintiff expressed concerns about redactions made in Brightstar's productions. In response, Brightstar asked that further discussion related to these redacted documents wait until after the exchange of privilege logs, which occurred on May 27, 2014. Brightstar also reconsidered some of its redactions and produced unredacted versions of certain documents.

18.     Plaintiff has identified certain documents with redactions it believes are improper. *See* chart attached as **Exhibit E**.

19.     In Rule 37 efforts, Brightstar provided the following explanations for the redactions (and other withheld documents). *See* June 24, 2014 email attached as **Exhibit F** and follow-up email attached as **Exhibit G**.

   a.   **"Relevance" description**. Certain documents were redacted and the explanation on the privilege log was "Relevance". Brightstar advised Shareholders that this

objection meant "beyond the scope" and stated that the redacted information is so highly sensitive that Brightstar did not want to produce it even under an "Attorney's Eyes Only" designation. Shareholders contend that absent an *in camera* inspection, this information should not have been redacted, but labeled Attorney's Eyes Only.

b. **TDMobility**. Many documents in the privilege log were withheld or redacted documents that were shared with between employees of TDMobility and Brightstar's in-house attorney, Brad Romig, often including other Brightstar employees. Brightstar's explanation is that TDMobility and Brightstar had a parent/affiliate relationship and shared attorneys and a common interest with regard to the subject matter of the redacted documents. Shareholders contend that TDMobility was not a wholly owned subsidiary during the majority of the time at issue, and Shareholders were unable to identify any case law supporting privilege across corporate lines unless a subsidiary is wholly-owned by the parent. Further, TDMobility and Brightstar did not have a common interest to protect since TDMobility never had a contractual obligation to the Shareholders, only Brightstar. For these reasons, communications involving TDMobility and Brightstar may not be deemed protected under the subsidiary or common interest doctrines.

c. **Tech Data**. Many documents in the privilege log were redacted or withheld yet were shared with Tech Data's employees. Brightstar contends that Tech Data and Brightstar had a common interest (shared responsibility for payment of the Earn-Out and a shared ownership of TDMobility) and as such, these communications were protected. Shareholders contend that the common interest doctrine does not apply for the reasons set for in Section I (*supra* at 4-5). For that reason, communications involving TDMobility and Brightstar may not be deemed protected under the common interest doctrine.

20. Shareholders seek a ruling on the legal basis for Brightstar's privileged documents and/or an *in camera* inspection to determine if the documents were properly redacted and/or withheld.

### IV. Plaintiff's Efforts at Conciliation Under Rule 37.

21. Document issues have existed from Brightstar's very first production. In response to the initial document requests, Brightstar produced only 6 pages – charts without supporting documentation (*see* Group Exhibit D). In its written responses to Plaintiff's discovery requests, Brightstar claimed not to understand terms that were defined and used in the SPA (which was attached to the Complaint and referenced in the instructions section of Plaintiff's requests). In the

initial Rule 37 conference call in January 2014, Brightstar immediately withdrew its objections to the terminology and agreed to produce documents. Nothing was produced until January 22, 2014, however, and then the production was partial and provided on a rolling basis, with the bulk produced by February 12, 2014.

22.     Not seeing some of the critical documents related to the calculation of the Earn-Out, Plaintiffs sought judicial intervention in March 2014. That motion to compel was denied for lack of specificity.

23.     After conducting numerous depositions, Plaintiffs gained the specificity of documents that should have been produced and served yet another request, asking for very specific documents.

24.     On April 30, 2014, counsel for Plaintiff sent a letter to counsel for Defendant outlining documents that had not yet been produced despite being sought in the Requests (the "April 30 Letter"). A copy of the April 30 Letter is attached hereto as **Exhibit H**.

25.     On May 2, May 6, May 9, and May 13, Brightstar produced additional documents.

26.     After reviewing these additional documents, counsel for Plaintiff sent counsel for Defendant a follow-up letter on May 15, 2014, outlining the remaining documents that had not been produced, in spite of the April 30 Letter and the additional productions (the "May 15 Letter"). A copy of the May 15 Letter is attached hereto as **Exhibit I**.

27.     The next day, counsel for Brightstar sent counsel for Plaintiff a letter in response to the April 30 Letter (the "May 16 Letter"). In the May 16 Letter, Brightstar referenced the documents outlined in the April 30 Letter and stated that (a) the documents had been produced,

(b) Brightstar had been unable to locate the requested documents, or (c) that Brightstar objected to the requested documents. A copy of the May 16 Letter is attached hereto as **Exhibit J**.

28.    Brightstar responded to the May 15 Letter on May 21, 2014, repeating the claims made in the May 16 Letter (the "May 21 Letter"). Brightstar denied it had delayed production of documents and insisted that it had either produced the requested documents or was still searching for particular documents. A copy of the May 21 Letter is attached hereto as **Exhibit K**.

29.    When Plaintiff attempted to initiate a Rule 37 phone call last week, Brightstar's counsel suggested that the upcoming Tech Data corporate representative deposition might eliminate or resolve some of the issues in dispute. As a result, Plaintiff delayed the filing of this Motion until today. The corporate representative deposition did aid Shareholder's understanding of certain issues, but did not eliminate the need for the documentation requested.

30.    The parties also engaged in Rule 37 conference calls on June 23 and 24, 2014, during which the above missing documents and privilege objections were discussed. Email correspondence confirmed the calls. (*See* **Exhibit F.**) Plaintiff believes it has afforded Brightstar every opportunity to produce the requested documents and, as a result, now seeks the relief requested above as to each item.

### V. Miscellaneous Outstanding Discovery.

#### a.    Supplemental Rule 26(a) Disclosures and Tech Data Corporate Representative.

31.    Brightstar's Supplemental Disclosures, issued on June 9, 2014, identify four new individuals[2] with knowledge regarding the disputes in this case. (*See* Supplemental Rule 26(a) Disclosures, attached as **Exhibit L at 2.**) Brightstar has indicated that these individuals have knowledge regarding enterprise sales, calculation of the Earn-Out, relevant revenue and

---

[2] The new names are Joseph Kalinoski, Max Caballero, Carlos Aguirre and Christopher T. Wilson.

expenses, and the negotiations and drafting of the letter of intent entered into between Plaintiff and Brightstar – many of which are topics that have been shrouded in mystery during this discovery phase.

32.     The deposition of Brightstar's corporate representative is scheduled for June 27, 2014, and discovery is set to close in this matter on June 30, 2014.

33.     Plaintiff asks that this Court allow it to take depositions of one or more of these four recently identified individuals *only if* Plaintiff determines they are necessary after completion of the deposition of Brightstar's corporate representative.

**b.   Tech Data Corporate Representative**

34.     Tech Data has a corporate representative to produce whose schedule makes it impossible to sit for a deposition prior to June 30, 2014. Due to previously scheduled travel, he is not available until the first week of August, 2014, so Plaintiff seeks leave to perform that deposition on the date he has proposed. Brightstar does not object to this request.

**c.   Best Buy Information**

35.     Plaintiff served Best Buy with a subpoena after Brightstar failed to produce any documents about its business with Best Buy. In an effort to be narrow, the subpoena restricted the request for purchase involving Best Buy for Business. The Shareholders have since discovered that Brightstar's sales were on the Best Buy account versus Best Buy for Business. The Shareholders have served Best Buy with another narrowly tailored Supplemental Subpoena, but Best Buy said it needs another few weeks to respond. Additionally, due to the testimony of one of the Shareholders, a Best Buy employee has been identified with relevant knowledge. Shareholders seek the ability to depose him next week.

**d. TDMobility Database**

36.     At the outset of this litigation, Tech Data permitted the Shareholders to preserve TDMobility's servers and database (the "TDMobility Database"), at the Shareholders' expense, costing the Shareholders thousands of dollars.  Tech Data agreed to permit Shareholders access so long as it was cleared in advance with Tech Data and subject to a certain conditions (i.e. advance approval, Attorney's Eyes Only designation to start, and the right to claw back and privileged documents).

37.     To extract information from the forensic image, however, costs hundreds more dollars.  To date, the Shareholders have extracted the Shareholders' own email information from the TDMobility Database, but other information may be necessary after the final depositions currently scheduled for June 27 and 30.  Shareholders seek only leave to coordinate further extractions with Tech Data after the June 30, 2014 discovery deadline.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order:

(a) Compelling Brightstar to produce:

    a. Correspondence and related documentation reflecting or related to the Earn-Out Calculations;

    b. Annual affiliate overhead allocations for 2010, 2011, 2012;

    c. Board/steering committee agendas, power points, minutes and other reports, to the extent not produced, for 2010, 2011 and 2012;

    d. The documents or data that went into preparing the BEL Chart produced as BRIGHTSTAR00007;

    e. The documents or data that went into preparing the Charts produced as BRIGHTSTAR00001-06.

(b) Or alternatively, providing adverse inference for the unproduced documentation as set forth in more detail above;

(c) Resolving the redacted and withheld documents based on the claims of (a) scope; (b) principal/subsidiary exception; and (c) common interest exception and compelling the production of improperly withheld or redacted documents;

(d) Permitting Shareholders to complete miscellaneous discovery after June 30, 2014, specifically:

    a.  potentially depose Brightstar's recently identified individuals with knowledge;

    b.  depose Tech Data corporate representative;

    c.  permit Best Buy to respond to the Supplemental Subpoena and produce a witness, and

    d.  extract data from the TDMobility database.

(e)  Awarding such other relief as this Court deems just.

Dated: June 25, 2014               Respectfully submitted,

                                       LAWRENCE S. KIRSCH, as Shareholders' Representative of LAWRENCE S. KIRSCH, CHARLES W. KRIETE, MICHAEL J. CHASE and GEORGE PUSZKA

                                       By:_____ /s/ Margaret A. Gisch_____
                                              One of His Attorneys

Margaret A. Gisch, Esq. (#6204431)
Laura A. Balson, Esq. (#6291377)
Anita J. Pancholi, Esq. (#6311288)
Brianna L. Golan, Esq. (#6299871)
GOLAN & CHRISTIE LLP
70 West Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300