UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAWRENCE S. KIRSCH,                          )
as Shareholders' Representative of           )
LAWRENCE S. KIRSCH, CHARLES W.               )
KRIETE, MICHAEL J. CHASE, and                )
GEORGE PUSZKA,                               )
                                             )     No. 12 C 6966
            Plaintiff,                       )
                                             )     Chief Judge Rubén Castillo
      v.                                     )
                                             )
BRIGHTSTAR CORPORATION,                      )
                                             )
            Defendant.                       )

## MEMORANDUM OPINION AND ORDER

Lawrence S. Kirsch, as Shareholders' Representative of Lawrence S. Kirsch, Charles W.

Kriete, Michael J. Chase, and George Puszka (collectively "Shareholders"), brings this diversity

action against Brightstar Corporation ("Brightstar") alleging common law breach of contract.

(R. 1, Compl.) On June 25, 2014, Shareholders moved to compel Brightstar to produce certain

withheld and redacted documents. (R. 72, Pl.'s Mot. Compel.) Shareholders argued, *inter alia*,

that Brightstar improperly redacted certain documents based on attorney-client privilege and

relevance. (*Id.* at 4-5, 7-8; R. 72-1, Ex. E at 10-12.) After a motion hearing on July 18, 2014,

this Court granted in part and denied in part Shareholders' motion to compel. (R. 86, Min.

Entry.) The Court directed Brightstar to submit the unredacted documents to Chambers for an *in

camera* review. (R. 87, Jul. 18, 2014 Tr. at 37:15-38:04.) Brightstar complied on August 8,

2014, producing the contested documents to the Court in both redacted and unredacted forms.

(R. 91, Def.'s Not. Submission Docs.) Brightstar also provided the Court with three charts that

highlight the documents Shareholders contest: Exhibit A lists the documents that were redacted

on the basis of privilege and were shared only with in-house and/or outside counsel; Exhibit B

lists the documents that were redacted on the basis of privilege and were shared with Tech Data

and/or TDMobility; and Exhibit C lists the documents that were redacted on the basis of

relevance. (R. 91-1, Ex. A at 2-4; R. 91-1, Ex. B at 6; R. 91-1, Ex. C at 8.) Shareholders

submitted to the Court the redacted documents, Brightstar's privilege log, and an updated chart

listing the contested documents and the basis of Shareholders' objections.[1] The Court confines

its *in camera* review to the documents the parties identified as contested.

## LEGAL STANDARD

Federal Rule of Evidence 501 provides, in relevant part, that "in a civil case, state law

governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Fed. R. Evid. 501. Because this Court has jurisdiction over this case based on diversity of

citizenship, and Shareholders' breach of contract claim is subject to Florida law, the issue of

attorney-client privilege is governed by Florida law. *See Kirsch v. Brightstar Corp.*, 968 F.

Supp. 2d 931, 937 (N.D. Ill. 2013). Under Florida law, the attorney-client privilege is codified in

section 90.502 of the Florida Statutes, which provides, in relevant part, that:

> (1)(c) A communication between lawyer and client is "confidential" if it is not
> intended to be disclosed to third persons other than:
>
> 1. Those to whom disclosure is in furtherance of the rendition of legal services
> to the client.
>
> 2. Those reasonably necessary for the transmission of the communication.
>
> (2) A client has a privilege to refuse to disclose, and to prevent any other person

---

[1] Shareholders provided the Court with a chart noting their objections to each contested document. This chart appears to be a version of the chart they submitted to the Court as Exhibit E attached to their motion to compel that has been updated to include the bases of Shareholders' objections and to reflect that Shareholders have withdrawn eight of their original 55 objections. (*See* R. 72-1, Ex. E.) Because this updated chart has no record citation, the Court will refer to it as "updated Ex. E."

from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

Fla. Stat. § 90.502(1)(c), (2); *see also Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1067 (Fla. 2011).

"The purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys." *Genovese*, 74 So. 3d at 1067 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (internal alteration omitted); *see also Hagans v. Gatorland Kubota, LLC/Sentry Ins.*, 45 So. 3d 73, 76 (Fla. Dist. Ct. App. 2010) ("The attorney-client privilege exists to protect not only the giving of professional advice, but also the giving of information to the lawyer to enable him to render sound and informed advice." (citing *Upjohn Co. v. United States*, 449 U.S. 383, 890 (1981))). In light of this goal, not all communications between the attorney and the client are privileged; "[b]ecause application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (applying Florida law on the issue of privilege). The privilege protects "only those disclosures necessary to obtain informed legal advice." *Genovese*, 74 So. 3d at 1067 (quoting *Fisher*, 425 U.S. at 403). The burden to establish the privilege rests on the party invoking it. *Fla. Sheriffs' Self-Ins. Fund v. Escambia Cnty.*, 585 So. 2d 461, 463 (Fla. Dist. Ct. App. 1991).

## DISCUSSION

The Court assumes familiarity with the facts of this case as outlined in its September 4, 2013 Memorandum Opinion and Order denying Brightstar's motion to dismiss the complaint. *See Kirsch*, 968 F. Supp. 2d at 933-35. On August 31, 2010, Brightstar purchased all of the stock of OTBT, Inc. ("OTBT") from Shareholders pursuant to the Stock Purchase Agreement

3

("SPA"). (R. 1, Compl. ¶¶ 2, 19.) The purchase price was set at $1 million plus debt obligations

and payment of an additional performance-based amount (the "Earn-Out"). (*Id.* ¶¶ 2, 20.) The

dispute in this suit revolves primarily around the calculation of the Earn-Out, which is linked to

certain revenue and the EBITDA. (*Id.* ¶ 21.) The Court now resolves the redacted documents in

the three categories Brightstar identified.

## I.    Documents redacted on the basis of attorney-client privilege that were not distributed beyond Brightstar and its outside counsel

Brightstar's Exhibit A lists 28 documents that it redacted as privileged.[2] (R. 91-1, Ex. A.

at 2-4.) These 28 documents were not distributed beyond Brightstar and its outside counsel.

(*Id.*) Brightstar contends that "these documents are no longer in dispute, as they were not shared

with third parties." (R. 91, Def.'s Not. Submission Docs. at 1.) Shareholders continue to object,

however, to 22 of these documents.[3] (Updated Ex. E.)

Shareholders object to the redactions of four of the documents—bates numbers 007520-

007522; 007559; 013454-13455; and 014479-014480—because Brightstar's privilege log

identified no attorneys as the authors or recipients of these documents.[4] (Updated Ex. E at 1-6.)

In Exhibit A, Brightstar provided the Court and Shareholders with the names of all the recipients

of the redacted portions of these documents. (R. 91-1, Ex. A at 2-4.) The Court has reviewed

Exhibit A and the four documents in question, and the Court confirms that the redacted portions

of the documents involve Brightstar's in-house counsel and/or outside counsel. The substance of

these documents falls squarely within attorney-client privilege.

---

[2] On Shareholders' updated Exhibit E chart, these documents are numbers 1-14, 18-19, 22-24, 36-37, 42-43, 45-47, 50, and 53. All of the documents are e-mails or attachments to e-mails.

[3] The six documents that Shareholders no longer object to are bates numbers: 007489; 012144-012145; 012170-012178; 013545; 013897-013900; and 014485-014486.

[4] On Shareholders' updated Exhibit E chart, these documents are numbers 11, 13, 18, and 43.

Shareholders object to the remaining 18 documents for various reasons. (Updated Ex. E.) Most of Shareholders' objections center around their belief that it is unlikely that the redacted e-mails involve legal advice or communicate privileged information. (*Id.*) The Court reiterates that the attorney-client privilege is narrowly applied and that "only those disclosures necessary to obtain informed legal advice" are protected. *Genovese*, 74 So. 3d at 1067 (quoting *Fisher*, 425 U.S. at 403). Several of the redacted e-mails involve in-house counsel and outside counsel but do not contain communications seeking informed legal advice. For instance, the document with bates number 008391[5] contains one e-mail between outside counsel, and the body of that e-mail simply contains a link to an attachment, which is not included. This e-mail itself, without the attachment, is not privileged and must be produced to Shareholders. The documents with bates numbers 008674-008675 and 012049[6] also contain e-mails sent to outside counsel, but these e-mails contain one word and do not seek legal advice. Thus, these documents, without the attachments, must be produced to Shareholders in unredacted form. The document with bates number 011737[7] contains one e-mail sent to outside counsel, and the text of the e-mail does not seek legal advice; this document must be produced to Shareholders. The document with bates numbers 011738-011789[8] is the attachment to the e-mail just referenced. Brightstar contends that it produced this document with no redactions, (R. 91-1, Ex. A at 2), but it in fact redacted bates number 011775. Brightstar must produce that missing page in unredacted form. The

---

[5] On Shareholders' updated Exhibit E chart, this document is number 24.

[6] On Shareholders' updated Exhibit E chart, these documents are numbers 36 and 37.

[7] On Shareholders' updated Exhibit E chart, this document is number 6.

[8] On Shareholders' updated Exhibit E chart, this document is number 7.

document with bates numbers 013214-013216[9] contains a series of e-mails involving outside counsel. Only the top e-mail that was redacted (bates number 013214) must be produced because it does not involve legal advice; bates number 013215 contains an e-mail involving legal advice and thus is privileged. Finally, the document with bates numbers 014079-014080[10] contains a series of e-mails that involve outside counsel and are privileged; the text in the bottom e-mail on bates number 014079 is not privileged, however, and must be produced in unredacted form.

The Court finds that the remaining documents all involve communications seeking or giving legal advice and thus were properly redacted on the basis of attorney-client privilege— bates numbers 007493-007495; 011170; 011185-011187; 011814-011816; 011897-011899; 012073-012074; 012146-012147; 012756-012757; 013217-013218; 013548-013551; and 014040-014042.[11]

## II. Documents redacted on the basis of attorney-client privilege that were shared with Tech Data and/or TDMobility

Brightstar's Exhibit B lists 11 documents that were shared with third parties Tech Data Corporation ("Tech Data")[12] and/or TDMobility, Inc. ("TDMobility")[13] and that it redacted as privileged. (R. 91-1, Ex. B at 6.) Shareholders object to the redaction of nine of these

---

[9] On Shareholders' updated Exhibit E chart, this document is number 2.

[10] On Shareholders' updated Exhibit E chart, this document is number 14.

[11] On Shareholders' updated Exhibit E chart, these documents are numbers 8, 47, 50, 12, 23, 42, 46, 1, 3, 19, and 10.

[12] Tech Data and Brightstar entered into a Joint Venture relationship to own and operate OTBT. (R. 1, Compl. ¶ 5.)

[13] After Brightstar acquired OTBT from Shareholders, it changed OTBT's name to ActivateIT, Inc., which later became TDMobility. (R. 1, Compl. ¶¶ 2, 5.)

documents[14]; Shareholders withdraw their objections to the documents with bates numbers 007307-007311 and 012179-012180. (Updated Ex. E. at 2-7.)

Brightstar argues that the documents it shared with Tech Data are privileged under the common interest doctrine because the communications "directly relate to Brightstar's and Tech Data's analysis of possible exposure in this litigation." (R. 76, Def.'s Reply at 4-6.) Shareholders argue that the common interest doctrine is inapplicable here because "Tech Data is not legally liable under the SPA, nor are the Shareholders seeking to hold Tech Data liable for Brightstar's obligations under the SPA," and thus "Tech Data and Brightstar do not share a common legal interest." (R. 72, Pl.'s Mot. Compel at 4-5.)

"It is well understood that matters that are covered by the attorney-client privilege retain their privileged status until the protection of the privilege has been waived by the client." *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 440 (Fla. Dist. Ct. App. 1987). Generally, "a voluntary disclosure to a third party of the privileged material, being inconsistent with the confidential relationship, waives the privilege." *Id.* (citing *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980)). An exception to this general waiver rule is the common interest doctrine, which "enables litigants who share unified interests to exchange this privileged information to adequately prepare their cases without losing the protection afforded by the privilege." *Id.* "Pursuant to this doctrine, attorneys representing clients with similar legal interests can share information without risk of being compelled to disclose such information generally." *MapleWood*, 295 F.R.D. at 605; *see also Visual Scene*, 508 So. 2d at 440. In deciding whether the common interest doctrine applies, the threshold questions are: "(1) whether the original disclosures were necessary to obtain informed legal advice and might not have been

---

[14] On Shareholders' updated Exhibit E chart, these contested documents are numbers 15-16, 33, 48-49, 51-52, and 54-55.

made absent the attorney-client privilege, (2) whether the communication was such that disclosure to third parties was not intended, and (3) whether the information was exchanged between the parties for the limited purpose of assisting in their common cause." *Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*, No. 06-21267-CIV, 2007 WL 2021939, at *2 (S.D. Fla. Jul. 11, 2007) (citing *Fisher*, 425 U.S. at 403; *Visual Scene*, 508 So. 2d at 441). What exactly qualifies as a similar legal interest or common cause is not fully developed under Florida law. *See Cone v. Culverhouse*, 687 So. 2d 888, 892 (Fla. Dist. Ct. App. 1997). One Florida court has noted that "the clients' interests must be sufficiently compatible that a reasonable client would expect his or her communications concerning the matter to be accessible to the other client." *Id.* at 893. Federal courts have applied the common interest doctrine "when persons share a common *legal* interest, not when the primary common interest is a joint business strategy that happens to include a concern about litigation." *Infinite Energy, Inc. v. Econnergy Energy Co.*, No. 1:06CV124-SPM/AK, 2008 WL 2856719, at *2 (N.D. Fla. Jul. 23, 2008). The interest must relate "to litigation for this privilege to apply, but actual litigation need not be ongoing." *Id.* (citing *Developers*, 2007 WL 2021939, at *3; *Visual Scene*, 508 So. 2d at 441; *United States v. Schwimmer*, 892 F.2d 237, 244 (2nd Cir. 1989)) (internal citations omitted). Further, "communications need not be made in anticipation of litigation to fall within the common interest doctrine." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007); *see also Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965 (N.D. Ill. 2010) ("potential parties and parties who are not otherwise joined in litigation" can "assert the 'common legal interest' privilege, even where it is not anticipated that the party will be sued in the future" (citing *BDO Seidman*, 492 F.3d at 816, n.6 (collecting cases from various circuits))).

Here, Tech Data is not a party to this suit, and Shareholders emphasize that they are not seeking to hold Tech Data liable for Brightstar's obligation to pay the Earn-Out under the SPA. (R. 72, Pl.'s Mot. Compel at 5.) Nevertheless, pursuant to an agreement entered into by Brightstar and Tech Data, Brightstar and Tech Data are each responsible for paying 50% of the Earn-Out. (R. 76-1, Ex. E, Request No. 3 Admit Facts at 86.) Thus, Brightstar and Tech Data have a common legal interest in "the accurate calculation of the Earn-Out" and in "minimizing any liability" to the Shareholders. (*See* R. 76, Def.'s Reply at 5.) Any privileged communications between Brightstar, Tech Data, and their respective attorneys relating to the Earn-Out provision of the SPA therefore could be protected under the common interest doctrine.

The Court has reviewed the two contested documents that Brightstar shared with Tech Data: bates numbers 011211-011218 and 012148-012155.[15] These documents are identical, and the redacted portion of these documents is an e-mail from a Tech Data employee to Brightstar's counsel and Tech Data's counsel. The text of the e-mail, however, does not seek legal advice and therefore is not protected by the attorney-client privilege. *See Genovese*, 74 So. 3d at 1067. Because the e-mail is not privileged, the common interest doctrine cannot protect the e-mail from disclosure. *See Developers*, 2007 WL 2021939, at *2; *McCullough v. Fraternal Order of Police, Chi. Lodge 7*, No. 12 C 9359, 2014 WL 2514623, at *6 (N.D. Ill. May 21, 2014) ("Unless the party asserting the 'common interest' establishes that the withheld communications or documents were otherwise privileged, the 'common interest' doctrine does not come into play."). Accordingly, Brightstar must produce these documents in unredacted form to Shareholders.

Brightstar argues that the documents it shared with TDMobility are privileged under the co-client doctrine and the common interest doctrine because "Brightstar's legal department and

---

[15] On Shareholders' updated Exhibit E chart, these documents are numbers 51 and 52.

outside counsel represented both Brightstar and TDMobility, as the latter had no in-house counsel." (R. 76, Def.'s Reply at 6.) Shareholders argue that "TDMobility was not a wholly owned subsidiary during the majority of the time at issue" and thus the co-client doctrine should not apply. (R. 72, Pl.'s Mot. Compel at 8.)

The co-client or joint client doctrine is another exception to the general rule that privilege is waived by disclosure of communications to a third party. *MapleWood*, 295 F.R.D. at 594; *see also McCullough*, 2014 WL 2514623, at *3 (noting that the joint client and common interest doctrines are distinct). "The joint client doctrine simply recognizes that the attorney client privilege can apply to joint clients of the same attorney, in the same litigation." *MapleWood*, 295 F.R.D. at 594. "The doctrine provides that disclosure by a client or her attorney, which otherwise might constitute a waiver of the attorney-client privilege, is not considered a waiver if the disclosure is made to a co-client of that attorney." *Id.*

Here, during the relevant time period, TDMobility was owned by Brightstar and Tech Data. (R. 76, Def.'s Reply at 6.) TDMobility had no in-house counsel, so Brightstar's legal department and outside counsel represented both Brightstar and TDMobility. (*Id.*) Although not a party to this suit, TDMobility is heavily involved in this litigation. Dimitry Izotov, the accounting manager for TDMobility at the time of the Earn-Out calculation, explained in his deposition that he consulted with Brightstar's attorney, Brad Romig, because Romig provided legal counsel to TDMobility. (R. 76-1, Ex. L, Izotov Dep. at 49:01-08.) Thus, as co-clients of Brightstar's legal team, Brightstar and TDMobility could share privileged documents relating to this litigation without waiving the attorney-client privilege. Shareholders contend that the co-client doctrine cannot apply "across corporate lines unless a subsidiary is wholly owned by the parent." (R. 72, Pl.'s Mot. Compel at 8.) Shareholders do not provide the Court with any case

law to support this assertion, and the Court did not find any authority to support this proposed restriction. The co-client doctrine simply requires an attorney to represent different clients involved in the same litigation, which is the case here.

There are three documents that Brightstar shared with TDMobility that Shareholders object to: bates numbers 007321-007314; 007550-007552; and 007553-007554.[16] The redacted portion of the document with bates numbers 007321-007314 is an e-mail exchange between Brightstar's outside counsel, Brightstar employees, and TDMobility employees concerning legal advice related to the drafting of the OTBT Shareholders' Agreement between Brightstar and Tech Data. The redacted portions of the documents with bates numbers 007550-007552 and 007553-007554 are e-mails involving Brightstar's outside counsel, Brightstar employees, and a TDMobility employee concerning legal advice related to the drafting of the Joint Venture documents. Thus, because all three documents involve legal advice relating to this litigation, they are all privileged under the attorney-client doctrine and protected under the co-client doctrine.

Finally, there are four documents that were shared with both Tech Data and TDMobility that Shareholders object to: bates numbers 002556-002558; 011171-011172; 011176-011178; and 012156-012157.[17] The redacted portions of the documents with bates numbers 002556-002558 and 012156-012157 are e-mails involving Brightstar's in-house counsel, Tech Data's in-house counsel, Tech Data employees, and a TDMobility employee concerning legal advice related to the Earn-Out provision. The redacted portions of the documents with bates numbers

---

[16] On Shareholders' updated Exhibit E chart, these contested documents are numbers 33, 15, and 16.

[17] On Shareholders' updated Exhibit E chart, these contested documents are numbers 55, 48, 49, and 54.

011171-011172 and 011176-011178 are e-mails involving Brightstar's in-house counsel, a Brightstar employee, a Tech Data employee, and a TDMobility employee, and these emails also contain legal advice relating to the Earn-Out provision. All four of these documents, therefore, involve privileged communications and are protected from disclosure under the common interest and co-client doctrines.

Accordingly, the Court finds that the following documents were properly redacted on the basis of attorney-client privilege: bates numbers 007321-007314; 007550-007552; 007553-007554; 002556-002558; 011171-011172; 011176-011178; and 012156-012157.

## III. Documents redacted on the basis of relevance

In Exhibit C, Brightstar lists 16 documents that it redacted on the basis of relevance. (R. 91-1, Ex. C. at 8.) Three of the documents—bates numbers 008405-008441; 008442-008490; and 008715-008763—are attachments to e-mails and were produced with no redactions,[18] and the document with bates number 008321-008323 is an e-mail that was produced with no redactions.[19] Shareholders have no objections to these documents. (Updated Ex. E. at 3-5.) Shareholders object to the redaction of the remaining 12 documents in Exhibit C. (Updated Ex. E.)

Brightstar argues that it redacted these documents because they contain sensitive information that is irrelevant to this dispute and is not responsive to any discovery request. (R. 76, Def.'s Reply at 8.) Brightstar contends that it "has an obvious interest in limiting the disclosure of its most sensitive information to what Plaintiffs are lawfully entitled to discover, and since Plaintiffs can offer no basis for inferring that Brightstar's redactions were improper or

---

[18] On Shareholders' updated Exhibit E chart, these documents are numbers 26, 27, and 41.

[19] On Shareholders' updated Exhibit E chart, this document is number 20.

hid relevant information," Brightstar should not have to produce these documents in unredacted form. (*Id.*) Shareholders argue that "absent an *in camera* inspection, this information should not have been redacted, but labeled Attorney's Eyes Only." (R. 72, Pl.'s Mot. Compel at 8.)

Redacting documents that are non-responsive to a plaintiff's document requests and irrelevant to the litigation is appropriate. *See, e.g., Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994) (upholding district court's denial of request for unredacted tax returns after finding that redacted material was irrelevant to issues at hand); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 222-23 (N.D. Ill. 2013) (Castillo, J.) (allowing the redaction of unrelated "business and financial information"); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701, 2009 WL 511866, at *3 (S.D. Ill. Feb. 27, 2009) (permitting the redaction of information that was not relevant to the issues in the case). In Exhibit C, Brightstar explains that the redacted documents concern "unrelated proprietary business information." (R. 91-1, Ex. C. at 8.) After reviewing the documents, however, the Court finds that the documents are potentially relevant to the case. The Court compelled the production of documents that relate to the definition of the term "EBITDA" as it is used in the SPA. (R. 87, Jul. 18, 2014 Tr. at 17:01-06.) Shareholders contend that information related to Brightstar's business operating expenses and its allocation of those expenses to its subsidiaries and affiliates is relevant to the definition of EBITDA. (R. 82, Pl.'s Reply at 8.) What entities qualify as affiliates under the SPA is disputed. (*See* R. 87, Jul. 18, 2014 Tr. at 28:07-19.) The Court will thus order the production of the following documents in unredacted form because they may be relevant to Shareholders' analysis of the EBITDA: bates numbers 001647-001823; 007556-007557; 008324-008327; 008404; 008585; 008586-008588[20];

---

[20] Brightstar incorrectly asserts that this document was produced with no redactions. (R. 91-1, Ex. C at 8.) Bates number 008587 is redacted.

008656-008658; 008683; 008684; 008714; 0014087-014089.[21] The document with bates

numbers 007322-007324[22] relates to the financial compensation for TDMobility executives, and

Shareholders argue that the document is "relevant to the requirements in the SPA of evaluating

industry standards for compensation." (Updated Ex. E at 6.) The Court thus orders that this

document also be produced in unredacted form. In response to Brightstar's concern that the

redacted information in these documents is "sensitive," (R. 76, Def.'s Reply at 8), the Court

notes that discovery in this litigation is subject to a Protective Order. (R. 36, Protective Order.)

Any sensitive business and confidential information shall be marked "Confidential – Attorneys'

Eyes Only." (*Id.*) Upon review of the documents, there does not appear to be any information

that is sufficiently sensitive to warrant redaction on that basis, and thus the Court finds that the

Protective Order is sufficient to resolve Brightstar's concerns regarding sensitivity.

---

[21] On Shareholders' updated Exhibit E chart, these documents are numbers 35, 17, 21, 25, 31, 32, 34, 39, 38, 40, and 30.

[22] On Shareholders' updated Exhibit E chart, this document is number 44.

## CONCLUSION

For the foregoing reasons, the Court orders Brightstar to produce the following documents in unredacted form within 14 business days: bates numbers 008391; 008674-008675; 012049; 011737; 011738-011789; 013214; 014079 (bottom e-mail); 011211-011218; 012148-012155; 001647-001823; 007322-007324; 007556-007557; 008324-008327; 008404; 008585; 008586-008588; 008656-008658; 008683; 008684; 008714; and 0014087-014089. The remaining contested documents are protected by attorney-client privilege.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

Dated: September 11, 2014