UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAWRENCE S. KIRSCH, )
as Shareholders' Representative of )
LAWRENCE S. KIRSCH, CHARLES W. )
KRIETE, MICHAEL J. CHASE, and )
GEORGE PUSZKA, )
                                            )      No. 12 C 6966
       Plaintiff, )
                                            )      Chief Judge Rubén Castillo
  v. )

BRIGHTSTAR CORPORATION, )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence S. Kirsch, as Shareholders' Representative of Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase, and George Puszka (collectively "Shareholders"), brings this diversity action against Brightstar Corporation ("Brightstar") alleging common law breach of contract. (R. 1, Compl.) Presently before the Court are: Plaintiff's motion to correct the record regarding whether a proper jury demand was made in this case, (R. 92, Pl.'s Mot. Correct); Brightstar's cross-motion for a jury trial pursuant to Federal Rule of Civil Procedure 39(b), (R. 94, Def.'s Resp.); and Brightstar's motion to amend its answer and to add an affirmative defense, (R. 95, Def.'s Mot. Amend). For the reasons stated below, the Court denies Plaintiff's motion to correct the record, grants Brightstar's motion for a jury trial, and grants Brightstar's motion to amend its answer and to add an affirmative defense.

I.    **Plaintiff's Motion to Correct the Record and Brightstar's Rule 39(b) Motion**

Plaintiff initiated this action on August 30, 2012. (R. 1, Compl.) Plaintiff's complaint does not contain a jury demand. (*Id.*) Plaintiff checked the jury demand box on the civil cover

sheet, however, which he filed with the complaint. (R. 2, Civil Cover Sheet.) Additionally, when Plaintiff electronically filed the complaint, he typed the words "Jury Demand" in the electronic filing system and those words appear on the docket. (*See* R.1, Compl.) On October 4, 2013, Plaintiff filed a joint status report, signed by both Plaintiff's and Defendant's counsel, stating that a "[j]ury trial has been requested." (R. 28, Joint Status Report at 4.) On May 7, 2014, the Court set the case for a jury trial beginning November 3, 2014. (R. 66, Min. Entry.) At a motion hearing on July 18, 2014, the Court reiterated that the case was set for a jury trial and set the date for the filing of a final pretrial order; the Court noted that the parties' proposed jury instructions were not due at that time. (R. 87, Jul. 18, 2014 Hr. Tr. at 09:11-13; 44:17-25.)

On August 14, 2014, almost two years after Plaintiff filed the complaint, Plaintiff moved to correct the record. (R. 92, Pl.'s Mot. Correct.) Plaintiff admits that "[t]hroughout the course of this litigation, both counsel and the Court erroneously believed a jury trial had been properly demanded," and "[i]n recent preparation for the upcoming trial, which has been set for November 3, 2014, Plaintiff discovered the error." (*Id.* at 2.) Plaintiff alleges that he did not intend to seek a jury trial and requests that the Court "correct" the record to reflect that no jury demand was made. (*Id.* at 3-4.) Plaintiff further requests that the case be resolved by a bench trial. (*Id.* at 4.) Brightstar responded to Plaintiff's motion on August 18, 2014, arguing that Plaintiff made a proper jury demand under Federal Rule of Civil Procedure 38. (R. 94, Def.'s Resp. at 3-5.) Alternatively, Brightstar argues that pursuant to Rule 39, the Court should permit the case to be decided by a jury to prevent undue prejudice to Brightstar. (*Id.* at 5-7.)

A.  **Legal standards**

Rule 38 requires a party to demand a jury trial by "serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading

2

directed to the issue is served[.]" Fed. R. Civ. P. 38(b)(1). Failure to properly serve a written demand results in the waiver of a jury trial. Fed. R. Civ. P. 38(d). Nonetheless, if a jury demand is not made in compliance with Rule 38, Rule 39 provides that "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b).

B. Discussion

1. Whether a proper jury demand was made pursuant to Rule 38

Here, Plaintiff did not serve Brightstar with a written demand for a jury. Plaintiff instead checked the jury demand box on the civil cover sheet and typed in "Jury Demand" in the electronic filing system. Courts have held that checking the jury demand box on the civil cover sheet does not constitute a proper demand in compliance with Rule 38 because the civil cover sheet is generally not served on the opposing party. *See Williams v. Reilly*, No. 94 C 4120, 1995 WL 625207, at *2 (N.D. Ill. Oct. 23, 1995) ("Defendant's erroneous checking of the jury demand box is not sufficient to comply with [Rule 38], and as such does not constitute a sufficient jury demand."); *see also Gonzalez v. Target Corp.*, No. 2:13-CV-01615-KJM-AC, 2014 WL 2548726, at *4 n.2 (E.D. Cal. Jun. 5, 2014) (quoting *Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983) ("The civil docket sheet is an administrative document . . . and is not served on the opposing party.")); *McCune v. U.S. Dep't of Justice*, No. 3:11-cv-423(DCB)(MTP), 2013 WL 2244341, at *2 (S.D. Miss. May 21, 2013). Brighstar argues that the checked box on the cover sheet along with the words "Jury Demand" on the docket should be sufficient for a proper jury demand, "regardless of whether the docket entry is formally 'served' with the complaint," because "in the age of electronic filing," the docket "is routinely reviewed by the parties' attorneys." (R. 94, Def.'s Resp. at 4-5.) Rule 38 requires proper service of the jury demand, and while the Court recognizes that Brightstar reviewed and relied on the docket

3

entry, it cannot find that Brightstar's review of the docket constitutes proper service. *See* Fed. R. Civ. P. 5(b). Accordingly, the Court finds that Plaintiff did not make a sufficient jury demand pursuant to Rule 38.

### 2. Whether the Court should order a jury trial pursuant to Rule 39(b)

Notwithstanding Plaintiff's failure to make a sufficient jury demand, the Court has discretion to grant Brightstar's untimely request for a jury trial pursuant to Rule 39(b). Fed. R. Civ. P. 39(b). Rule 39(b) allows courts "to grant an untimely demand for a jury, but only . . . if a good reason for the belated demand is shown." *Olympia Express, Inc. v. Linee Aeree Italiana, S.P.A.*, 509 F.3d 347, 352 (7th Cir. 2007); *see also Merritt v. Faulkner*, 697 F.2d 761, 767 (7th Cir. 1983) ("In the absence of strong and compelling reasons to the contrary, untimely jury demands should be granted."). The Seventh Circuit has directed district courts to "approach each application under Rule 39(b) with an open mind and an eye to the factual situation of that particular case, rather than with a fixed policy." *Members v. Paige*, 140 F.3d 699, 703-04 (7th Cir. 1998). In assessing a Rule 39(b) motion, the court must consider and balance the following five factors: "(1) whether the issues involved are best tried before a jury; (2) whether the court's schedule or that of the adverse party will be disrupted; (3) the degree of prejudice to the opposing party; (4) the length of the delay; and (5) the reason for the movant's tardiness in demanding a jury trial." *Synet, Inc. v. Microsoft Corp.*, No. 95 C 6195, 1998 WL 102707, at *2 (N.D. Ill. Mar. 2, 1998); *see also Fed. Ins. Co. v. Church*, No. 04-C-2478, 2005 WL 1500958, at *2 (N.D. Ill. Jun. 8, 2005). "Among the five factors, the more significant factors are (3), (4), and (5)." *Early v. Bankers Life & Cas. Co.*, 853 F. Supp. 268, 271 (N.D. Ill. 1994). In short, "Rule 39(b) relief should be granted only if the totality of the circumstances surrounding the untimely

jury demand indicates that there is some colorable justification for the tardy jury demand and that noncompliance has no substantive effect on the other party." *Synet*, 1998 WL 102707, at *2.

Brightstar contends that it is now making an untimely jury demand because like the Court and opposing counsel, it was under the assumption that Plaintiff had demanded a jury trial. (R. 94, Def.'s Resp. at 5.) Plaintiff checked the jury demand box on the civil cover sheet, typed the words "Jury Demand" in the electronic filing system, represented to the Court in the joint status report that it was requesting a jury trial, and stood by without objection as the Court set the jury trial date and entered orders pertaining to the trial. Plaintiff had ample opportunity throughout the course of this litigation to notify the Court of this error, but instead waited until three months before the original trial date to bring this issue up. Brightstar argues that it was justified in relying on Plaintiff's actions to assume the case was to be tried in front of a jury, (R. 94, Def.'s Resp. at 5-6), and the Court agrees. *See Partee v. Buch*, 28 F.3d 636, 636 (7th Cir. 1994) (finding that plaintiff was entitled to rely on defendant's jury demand and was not required to file a separate jury demand). Thus, the Court finds that Brightstar has shown a good reason for its belated demand. *See Olympia*, 509 F.3d at 352.

Additionally, Brightstar argues that converting this case to a bench trial would cause unfair prejudice. (R. 94, Def.'s Resp. at 1-2.) Brightstar contends that the prejudice "in all aspects of this case, from approach to the settlement conference to discovery, depositions, choice of expert witness, and everything else, would be substantial and unfair should Plaintiffs be permitted to make such a fundamental change to this case at this late hour." (*Id.* at 2.) The Seventh Circuit has recognized that "preparation for a trial often depends critically on whether it will be a jury trial or a bench trial." *Olympia*, 509 F.3d at 351. Additionally, "[k]nowing which kind of trial it will be may also facilitate settlement by dispelling a material uncertainty, since

5

some claims are known to be more appealing to juries than to judges, and vice versa." *Id.* From the inception of this lawsuit, Brightstar designed its litigation tactics and discovery strategies with a jury trial in mind. Thus, the Court finds that it would be unduly prejudicial to Brightstar to convert the case to a bench trial at this late stage. Additionally, Plaintiff has not explained to the Court how he will be prejudiced by a jury trial. Indeed, Plaintiff admitted that until recently, Plaintiff's counsel "believed a jury trial had been properly demanded." (R. 92, Pl.'s Mot. Correct at 2.) Accordingly, the Court cannot find that granting Brightstar's Rule 39(b) motion will cause Plaintiff undue prejudice.

As to the second factor, neither the Court's schedule nor Plaintiff's schedule will be disrupted if the case remains a jury trial. Finally, as to the first factor, the Court recognizes that this case involves complex issues; the Court does not believe, however, that the issues are so complex that they are beyond a properly instructed jury's capabilities in a lawsuit tried by competent counsel. Accordingly, after reviewing the totality of circumstances, the Court finds that the factors weigh in favor of granting Brightstar's Rule 39(b) motion.

### 3. Whether Plaintiff waived Section 7.11 of the Stock Purchase Agreement

Finally, Plaintiff notes that Section 7.11 of the Stock Purchase Agreement ("SPA") includes a waiver of the right to a jury trial signed by both parties. (R. 92, Pl.'s Mot. Correct at 2; R. 1-1, Ex. 1, SPA at 42.) Plaintiff argues that his checking of the jury demand box on the civil cover sheet was not intended to be a waiver of Section 7.11 and, therefore, he did not "clearly, unequivocally, and decisively" waive his contractual right to a bench trial. (R. 92, Pl.'s Mot. Correct at 3) (quoting *Sphere Drake Ins. Ltd. v. American Gen. Life Ins. Co.*, 376 F.3d 664, 679 (7th Cir. 2004)). Brightstar argues that Plaintiff's conduct has been "'wholly inconsistent'

6

with any intent to invoke the jury waiver provision of the SPA" and thus the Court should find that he waived his contractual right under Section 7.11. (R. 94, Def.'s Resp. at 7.)

Because this Court has jurisdiction over this case based on diversity of citizenship, and Plaintiff's breach of contract claim is subject to Florida law, the issue of waiver of a contractual provision is governed by Florida law. *See Kirsch v. Brightstar Corp.*, 968 F. Supp. 2d 931, 937 (N.D. Ill. 2013). Under Florida law, the doctrine of waiver "is based on the principle that 'a party may waive any right to which he is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution.'" *DK Arena, Inc. v. EB Acquistions I, LLC*, 112 So. 3d 85, 97 (Fla. 2013) (quoting *Gilman v. Butzloff*, 22 So. 2d 263, 265 (Fla. 1945) (internal alteration omitted)). Waiver is defined as "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005).

Here, Plaintiff's conduct implied that he was voluntarily and intentionally relinquishing his contractual right to a bench trial. As explained above, Plaintiff's actions throughout the entire course of this litigation led both Brightstar and the Court to believe that he intended to have this case tried before a jury. Because Plaintiff has taken actions inconsistent with his contractual right to a bench trial, the Court finds that Plaintiff has waived that contractual right. *See Coleman v. Lazy Days RV Center, Inc.*, No. 8:05-CIV-930-T-17TBM, 2007 WL 2696789, at *2 (M.D. Fla. Sept. 12, 2007) (finding that defendant waived its contractual right to a bench trial by taking actions inconsistent with that right, and thus the court ordered a jury trial); *see also Donald & Co. Securities, Inc. v. Mid-Florida Community Servs., Inc.*, 620 So. 2d 192, 193 (Fla. Dist. Ct. App. 1993) (finding that defendants waived their "valid, irrevocable, and enforceable" contractual right to arbitrate by taking actions inconsistent with that right).

7

Accordingly, the Court grants Brightstar's Rule 39(b) motion, and the case shall remain set for a jury trial.

## II. Brightstar's Motion to Amend Answer and to Add an Affirmative Defense

On August 31, 2010, Brightstar purchased all of the stock of OTBT, Inc. ("OTBT") from Shareholders pursuant to the SPA. (R. 1, Compl. ¶¶ 2, 19.) The purchase price was set at $1 million plus debt obligations and payment of an additional performance-based amount (the "Earn-Out"). (Id. ¶¶ 2, 20.) The dispute in this suit revolves primarily around the calculation of the Earn-Out. Section 2.1(c)(iii) of the SPA provides a table of revenue thresholds (Column A), and corresponding EBITDA caps (Column B), which would apply to the Earn-Out calculations. (R. 1-1, Ex. 1, SPA at 16-17; R. 95, Def.'s Mot. Amend at 1-2.) In short, if OTBT, during the Earn-Out period, received at least the gross revenue set forth in Column A, the Earn-Out would be set up to the corresponding EBITDA cap specified in Column B. (R. 95, Def.'s Mot. Amend at 1-2.)

On March 31, 2011, Brightstar and Shareholders executed a Second Amendment to the SPA (the "Second Amendment"), which was drafted by Brightstar. (Id. at 2.) The Second Amendment amended the table of tiered milestones in Section 2.1(c)(iii) by reducing the revenue thresholds in Column A, while keeping the corresponding EBITDA caps in Column B the same. (Id. at 2-3; R. 1-1, Ex. 3, Second Amendment at 78.) Brightstar contends that "in return for lowering the revenue thresholds to make it easier for [Shareholders] to get a higher earn-out," Shareholders agreed to "not claim that certain products (namely, laptops sourced by third-party Tech Data Corporation ("Tech-Data")), should be counted toward OTBT's revenue for purposes of the earn-out." (R. 104, Def.'s Reply at 1-2.) Shareholders now claim, however, that Tech Data's laptop sales should have been included in the Earn-Out. (Id. at 3-4.)

8

On September 24, 2013, Brightstar filed its original answer to Plaintiff's complaint, in which it admitted that the Second Amendment replaced Section 2.1(c)(iii) of the SPA. (R. 24, Def.'s Answer at 8.) On August 18, 2014, Brightstar moved to amend its answer to admit that the Second Amendment was intended to replace Section 2.1(c)(iii) of the SPA, but to deny that the Second Amendment was effective due to lack of consideration to Brightstar. (R. 91-1, Ex. 1, Proposed Amended Answer at 8.) Brightstar additionally moved to add the affirmative defense of failure of consideration as to the Second Amendment. (*Id.* at 13.) Plaintiff argues that the Court should deny Brightstar's motion because the motion "was unduly delayed, filed in bad faith, and results in undue prejudice to Plaintiff." (R. 100, Pl.'s Resp. at 4.)

A.   **Legal standard**

Federal Rule of Civil Procedure 15(a)(2) states that courts should freely give a party leave to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has instructed that leave to amend should be freely granted unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Ultimately, "[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

B.   **Discussion**

Plaintiff first argues that Brightstar's motion is unduly delayed because Brightstar waited to file the motion until almost a year after filing its original answer and more than a month after

9

discovery closed. (R. 100, Pl.'s Resp. at 6.) According to Plaintiff, this delay is unexplained and unjustifiable because Brightstar was made aware of the issue regarding the validity of the Second Amendment in February 2014. (*Id.*) Brightstar counters that "the history of discovery here shows there was no unreasonable delay." (R. 104, Def.'s Reply at 3.) Brightstar contends that until Plaintiff's deposition on February 21, 2014, it was operating under the assumption that Shareholders had agreed to exclude Tech Data's laptop sales in the Earn-Out calculation in exchange for Brightstar lowering the revenue thresholds in Column A. (*Id.* at 1-3.) Plaintiff testified in his deposition, however, that the Second Amendment he signed did not require Shareholders to give anything to Brightstar in exchange for the reduction in revenue tiers, nor did it require laptop revenue to be excluded from the Earn-Out calculation. (R. 104-1, Ex. A, Kirsch Dep. at 247:22-248:04; 250:12-251:03.) Brightstar contends that once it learned from Plaintiff that Shareholders were disputing what was given in exchange for the Second Amendment, it explored the issue in the subsequent depositions of several more witnesses and in interrogatories. (R. 104, Def.'s Resp. at 6.) Brightstar argues that it did not achieve "closure" on this issue until the deposition of Tech Data's second Rule 30(b)(6) witness, which, did not occur until August 7, 2014. (*Id.*) Brightstar contends that "once the full picture was known, with Tech Data's August 30(b)(6) deposition, and Brightstar was confident the defense had merit, Brightstar then filed its motion." (*Id.* at 8.)

While Brightstar's explanation for why it waited until August 18, 2014 to file its motion is plausible, waiting until the close of discovery to file a motion for leave to amend is generally not preferred. *See, e.g.*, *Hukic*, 588 F.3d at 432 (affirming denial of leave to amend complaint brought three days before the close of discovery); *Soltys*, 520 F.3d at 743 (affirming denial of leave to amend where amended complaint was filed 14 months after original complaint and after

10

close of discovery). However, "[d]elay on its own is usually not reason enough for a court to deny a motion to amend." *Soltys*, 520 F.3d at 743 (citing *Dubicz v. Commonweath Edison Co.*, 377 F.3d 787, 739 (7th Cir. 2004); *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992)). Rather, "[d]elay must be coupled with some other reason," such as "prejudice to the non-moving party." *Dubicz*, 377 F.3d at 739; *see also Bower v. Jones*, 978 F.2d 1004, 1010 (7th Cir. 1992) (finding no undue delay where plaintiff did not have access to information until late in discovery and requested leave to amend shortly thereafter and finding no undue prejudice to the defense); *Wade v. Collier*, No. 10 C 6876, 2012 WL 5363414, at *2 (N.D. Ill. Oct. 30, 2012) (granting defendants' motion for leave to file an affirmative defense filed after the close of discovery because plaintiff would not be prejudiced by defendants' late filing); *Sommerfield v. City of Chi.*, No. 06 C 3132, 2008 WL 4542954, at *3-*4 (N.D. Ill. 2008 Apr. 29, 2008) ("Absent prejudice to the [defendant], the delay is not so grievous as to place the request for leave to amend outside the realm of requests that should be liberally granted."); *Chen v. Mayflower Transit, Inc.*, 159 F. Supp. 2d 1103, 1107-08 (N.D. Ill. 2001).

Plaintiff argues that granting Defendant's motion would unfairly prejudice him because he did not, and now cannot, conduct discovery into the issue regarding the validity of the Second Amendment. (R. 100, Pl.'s Resp. at 7.) Plaintiff contends that the questions asked by Brightstar during Shareholders' depositions and the interrogatory issued in March 2014 inquiring into the consideration for the Second Amendment "were a surprise," and "because Defendant had admitted the validity of the Second Amendment in its original answer, Plaintiff did not know it was necessary to do discovery regarding the issue." (*Id.*) Plaintiff argues that had he known during discovery that Brightstar was going to assert this affirmative defense, he "would have

11

pursued this line of inquiry, particularly because (Shareholders believe) there is support for the reduction in thresholds." (*Id.*)

Brightstar counters that Plaintiff's arguments about prejudice are "hollow" because "the evidence that supports Brightstar's defense comes entirely from [Shareholders'] own words, [Shareholders] have amply explored the issue in discovery themselves, and nothing prevented them from doing more." (R. 104, Def.'s Reply at 8.) Brightstar contends that Shareholders knew since February that Brightstar was exploring this issue regarding the Second Amendment in discovery, and that Shareholders explored the issue themselves in the depositions of almost every Brightstar witness, as well as Tech Data's Rule 30(b)(6) witnesses. (*Id.* at 5-6.) Brightstar points out that Plaintiff cites no additional discovery he would have taken on this issue and that there is nothing Shareholders "could have done differently [in their depositions] short of testifying differently." (*Id.* at 8.)

"Almost every amendment will result in some prejudice to the non-moving party, therefore the question is whether the prejudice is undue." *Douglas Press, Inc. v. Tabco Inc.*, No. 00 C 7338, 2004 WL 1144054, at *2 (N.D. Ill. May 17, 2004). Here, Plaintiff was put on notice at his deposition in February 2014 that Brightstar was beginning to inquire about the consideration behind the Second Amendment. The Court thus finds Plaintiff's argument that he was surprised at the questions Brightstar asked to the other Shareholders in their depositions and in the interrogatories unpersuasive. It is clear from the record that Brightstar diligently pursued this issue in discovery and therefore the Court is unconvinced that Plaintiff was unaware that Brightstar might challenge the validity of the Second Amendment. Indeed, a review of the record shows that beginning in April 2014, Plaintiff questioned several Brightstar witnesses about the purpose of the Second Amendment. (*See* R. 104-1, Ex. H, Cost Dep. at 35:01-36:03;

12

R. 104-1, Ex H, Taylor Dep. at 102:15-103:15; R. 104-1, Ex. H, Reilly Dep. at 98:05-101:18; R. 104-1, Ex. H, Marry Dep. at 90:07-91:17.) Plaintiff also questioned both of Tech Data's Rule 30(b)(6) witnesses, Dimitry Izotov and Jeremy Evans, about the reasons behind the reductions in revenue thresholds in the Second Amendment and how the reductions related to Tech Data's laptop sales. (R. 104-1, Ex. I, Izotov Dep. at 45:11-46:23; R. 104-1, Ex. J, Evans Dep. at 27:03-29:16.) Therefore, the Court finds that Plaintiff pursued this line of inquiry and conducted sufficient discovery into the issue regarding the validity of the Second Amendment. Further, Plaintiff does not identify what additional discovery he would have conducted had he been aware that Brightstar was going to challenge the Second Amendment; rather, Plaintiff vaguely states that he would have "elicited testimony to defeat the affirmative defense." (R. 100, Pl.'s Resp. at 4.) Accordingly, the Court finds that Plaintiff will not be unduly prejudiced by Brightstar's amendment. *See Sitrick v. FreeHand Sys., Inc.*, No. 02 C 1568, 2004 WL 725306, at *3 (N.D. Ill. Mar. 31, 2001) (noting that because the relevant facts were also known to defendant, plaintiff's "proposed amendment should hardly catch [defendant] by surprise, and 'where the facts on which a previously unasserted claim is based are all known or available to all parties, no prejudice exists'") (quoting *Serfecz v. Jewel Food Stores, Inc.*, No. 92 C 4171, 1997 WL 543116, at *4 (N.D. Ill. Sept. 2, 1997))); *see also ICU Medical, Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 579 (D. Del. 2009) (finding no undue prejudice to plaintiff from permitting defendant to add an affirmative defense, even though discovery had closed, because plaintiff had already deposed witnesses on the relevant issues).

Finally, Plaintiff argues that the Court should deny Brightstar's motion because it was filed in bad faith. (R. 100, Pl.'s Resp. at 8.) Brightstar authored the Second Amendment and asked Shareholders to sign it, and so Plaintiff contends that it "strains credulity" for Brightstar to

13

now suggest that the Second Amendment fails for lack of consideration. (*Id.*) Additionally, Plaintiff contends that Joseph Kalinoski, Brightstar's corporate representative, did not testify in his deposition that the Second Amendment was void for lack of consideration, and Plaintiff did not ask him any questions relating to this issue because Plaintiff did not know the validity of the Second Amendment was in dispute. (*Id.*) Brightstar counters that it was Plaintiff's decision not to ask Kalinoski detailed questions about the Second Amendment. (R. 104, Def.'s Reply at 10.) Brightstar argues that Plaintiff's reason for not eliciting testimony from Kalinosky on this issue—that he did not know the validity of the Second Amendment was in dispute—is disingenuous. (*Id.*) In Brightstar's view, Plaintiff should have been aware of the issue given the Shareholders' own testimony, Brightstar's exploration of the matter in discovery, and the fact that prior to and after Kalinosk's deposition, Plaintiff asked witnesses questions about the Second Amendment. (*Id.*) Further, Brightstar argues that it "strains credulity" for Plaintiff "to claim the Second Amendment's benefits, and even acknowledge its underlying purpose to be the exclusion of laptop sales from OTBT's revenue," yet assert that "he does not have to honor that deal." (*Id.*)

The record does not support a finding that Brightstar acted in bad faith in filing its motion. Brightstar acquired new evidence in discovery that Shareholders were denying giving anything to Brightstar in exchange for lowering the revenue thresholds in the Second Amendment, and so it sought leave to amend it's answer and add an affirmative defense "to hold [Shareholders] to the only logical result of their positions." (R. 104, Def.'s Reply at 10.) Given these facts, the Court finds that Brighstar did not engage in any improper conduct. *See Triteq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*, No. 10 C 1304, 2011 WL 3203303, at *2 (N.D. Ill. Jul. 21, 2011) (finding no bad faith and granting plaintiff leave to amend its complaint

14

where plaintiff "acquired new evidence through discovery and then promptly sought leave to amend").

As Brightstar suggests, Plaintiff appears to be taking contradictory positions—claiming that the Second Amendment is valid while at the same time denying that the Second Amendment gives any benefit to Brightstar or that laptop sales should be excluded. Brightstar's amended answer seeks to challenge Plaintiff's positions, and the Court finds no reason to deny Brightstar the opportunity to test his affirmative defense on the merits. *See Foman*, 371 U.S. at 182. Accordingly, the Court grants Brightstar's motion to amend its answer and to add an affirmative defense of failure of consideration as to the Second Amendment.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to correct the record (R. 92) is DENIED and Brightstar's Rule 39(b) motion for a jury trial (R. 94) is GRANTED. Brightstar's motion to amend its answer and to add an affirmative defense (R. 95) is also GRANTED. The parties are once again requested to exhaust all settlement possibilities for this dispute. A status hearing will be held in open court on November 4, 2014 at 9:45 a.m. to set a new jury trial date and a corresponding new date for the filing of a Final Pretrial Order.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: October 10, 2014